53 A.3d 652

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JOHNNIE PARKER, DEFENDANT–APPELLANT.

Argued January 30, 2012—Decided October 16, 2012.

*Lois A. De Julio,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Ms. De Julio* and *Stefan Van Jura,* Assistant Deputy Public Defender, and *Michael C. Kazer,* Designated Counsel, on the briefs).

*Nancy P. Scharff,* Assistant Prosecutor, argued the cause for respondent (*Warren W. Faulk,* Camden County Prosecutor, attorney; *Ms. Scharff,* on the briefs).

Judge WEFING (temporarily assigned) delivered the opinion of the Court.

Our trial judges are confronted daily with daunting case loads and strained resources. The challenge of hearing these matters

and disposing of them appropriately and justly within a reasonable time frame can, at times, appear insurmountable, making it even more difficult to adhere "to the real business of the courts, which is to dispense substantial justice on the merits." *Fusco v. Fusco,* 186 *N.J.Super.* 321, 329, 452 *A.*2d 681 (App.Div.1982). Adding to the burden is the need for each judge to remain constantly aware that each such matter involves not just docket numbers but individuals who have turned to the courts seeking relief from what they perceive as unfairness and injustice. This need is particularly crucial in the criminal courts, where individuals confront the power of the State's prosecutorial arm. This appeal calls upon us to provide some guidelines for our criminal trial judges as they struggle to accommodate what at times may appear to be conflicting demands on their time and resources. Because we are satisfied that in this instance the trial judge struck the wrong balance, we reverse and remand this matter for further proceedings.

I.

Defendant had just turned seventeen years old when the police questioned him in connection with the death of Demetreas Fletcher.[1] The police wanted to speak with defendant because several individuals said that defendant was the last person to have been seen with Fletcher.

After his grandmother gave permission to the police to question him, and after being advised of his rights, defendant gave a statement in which he admitted that he and Tremaine Paige, sixteen years old, had repeatedly stabbed Fletcher. He said he did so, however, at the behest of Michael Ramseur, known as Polo Mike, a drug dealer for whom defendant had worked. In the record before us, this individual is consistently referred to as Polo or Polo Mike, and we shall follow that practice for purposes of this

---

[1] In some portions of the record he is referred to as Demetress Fletcher. He is also referred to by his street name, Meat.

opinion. Defendant said that Polo Mike had given him a gun earlier and that defendant lent the gun to someone named Aron who had, in turn, sold it. This angered Polo Mike, and in his statement, defendant said that Polo Mike told him he had to get the gun back and that he had to stab Fletcher. In his statement, defendant did not clarify the relationship between Aron and Fletcher. Defendant said he believed that if he did not comply with these instructions, Polo Mike would have him killed. Defendant went to Paige and explained the situation, and Paige agreed to help him. Defendant said they drove around Camden looking for Aron, with Fletcher in the car. When they could not locate Aron, they repeatedly stabbed Fletcher and left him in an area known as Pink Elephant Park. He said they returned to Polo Mike and reported what they had done. Polo Mike helped them dispose of their bloody clothing.

The police also questioned Tremaine Paige. Although Paige's statement differed from defendant's statement in certain minor details (Paige, for instance, said that defendant gave Fletcher the gun Polo Mike had given to defendant and Fletcher had sold it), it substantially corroborated defendant's statement that Polo Mike had ordered that Fletcher be killed, and both defendant and Paige feared for their lives if they did not comply.

## II.

The Family Part waived jurisdiction over both young men, and both were indicted for murder, *N.J.S.A.* 2C:11–3(a)(1) and (2); conspiracy, *N.J.S.A.* 2C:5–2; possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d); unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d); hindering apprehension, *N.J.S.A.* 2C:29–3(b)(1); tampering with evidence, *N.J.S.A.* 2C:28–6(1); and endangering an injured victim, *N.J.S.A.* 2C:12–1.2. Defendant eventually entered a negotiated plea of guilty to an amended charge of aggravated manslaughter, and the State agreed to recommend a sentence of twenty-five years in prison, subject to the parole ineligibility provisions of *N.J.S.A.* 2C:43–7.2. When defendant and

his attorney appeared before the trial court to plead guilty, there was no mention of Polo Mike and defendant's belief that he would be killed if he did not comply with Polo Mike's directions. A trial judge accepted defendant's guilty plea, and on November 21, 2003, another trial judge sentenced defendant in accordance with the State's recommendation. At the sentencing proceedings, defendant's attorney made no argument on defendant's behalf. He merely expressed sympathy for the victim's family and asked the trial court to sentence defendant in accordance with the negotiated plea.

Defendant did not file a direct appeal from his conviction or sentence but did file a timely petition for post-conviction relief in October 2007, and counsel was assigned to represent defendant. The attorney assigned to represent defendant submitted a brief in which he contended that defendant's trial attorney was ineffective in a variety of ways, including failing to assert that defendant had acted under duress, *N.J.S.A.* 2C:2–9(a), failing to conduct any investigation into the surrounding facts, and failing to present any argument at sentencing that defendant should receive a lesser period of incarceration.

The judge who handled defendant's post-conviction relief petition was not the judge who had presided at defendant's guilty plea. Nor was he the judge who had imposed sentence on defendant. The post-conviction relief judge reviewed the papers submitted in support of and in opposition to defendant's petition and entered an order denying relief. Accompanying the order was an eight-page statement of reasons the trial judge had prepared. The first four pages are an accurate summary of the legal principles that are applicable in assessing the merits of a petition for post-conviction relief, and the last sheet contains merely the signature of the trial judge.

In the remaining three pages, the trial judge set forth his reasons for denying relief to defendant. He stressed that defendant had not submitted any certifications or affidavits in conjunction with his petition and thus concluded that defendant had not

set forth a factual basis for the defense of duress or how it might have affected the outcome of the case. The trial judge noted that under *N.J.S.A.* 2C:2–9(b), duress would serve only to reduce the offense of murder to manslaughter and since, in the trial judge's words, defendant had "pled to manslaughter as part of his negotiated agreement, a successful duress defense would have achieved the same result as petitioner's plea."

The trial judge similarly rejected defendant's claim that he had received ineffective assistance from his trial counsel because the attorney had failed to conduct an adequate investigation into the case or defendant's social background. He noted that defendant had not provided evidence of anything within his background that might mitigate his criminal culpability for the death of Demetreas Fletcher and had not even provided the names of witnesses that the attorney had failed to interview.

The trial judge similarly disposed of defendant's remaining claims—that the attorney had not pursued his case vigorously because he had charged an inadequate fee, that the attorney had been ineffective because he had not attempted to achieve a more favorable result by offering defendant's cooperation against Polo Mike in exchange for a lesser sentence, and because he had not argued at sentencing that mitigating factors 12 and 13, *N.J.S.A.* 2C:44–1(b)(12) (willingness to cooperate with law enforcement authorities) and *N.J.S.A.* 2C:44–1(b)(13) (conduct of a youthful defendant was substantially influenced by a more mature individual), warranted a lesser sentence than the bargained-for twenty-five years.

Defendant appealed from the trial court order denying his petition for post-conviction relief. He presented four arguments in support of his appeal: that the trial judge erred by hearing the matter on the papers, without having obtained a waiver of oral argument; that defendant had established in his papers a prima facie case of ineffective assistance of counsel, and thus the trial judge should have conducted an evidentiary hearing; the denial of post-conviction relief was a denial of defendant's Sixth Amend-

ment right to the assistance of counsel; and a reassertion of all other issues that had been raised in support of defendant's petition. Defendant submitted a supplemental pro se brief with seven separate point headings.

The Appellate Division, in an unpublished opinion, affirmed the trial judge's order, finding that the arguments raised by defendant's attorney had been addressed adequately by the trial judge. It separately analyzed and rejected the arguments defendant raised in his pro se brief. With respect to the issue of whether the trial judge should have heard oral argument before deciding whether to grant post-conviction relief to defendant, the appellate panel noted that the matter was essentially a discretionary one and that it did "not discern a legal basis upon which to second-guess that discretionary ruling."

We granted defendant's petition for certification to consider defendant's contention that he was entitled to oral argument in connection with his first petition for post-conviction relief. 207 *N.J.* 35, 21 *A.*3d 1185 (2011).

### III.

The arguments before us are narrow and focused. Defendant contends that a defendant is entitled to oral argument as a matter of right in support of his petition for post-conviction relief and that a denial of oral argument, without an explicit waiver, represents a denial of a defendant's Sixth Amendment right to the effective assistance of counsel. Defendant contends, in the alternative, that the trial judge abused his discretion when he dispensed with oral argument in deciding this matter.

The State counters by asserting that there is no right to oral argument in connection with a petition for post-conviction relief, that the matter rests within the sound discretion of the judge. It adds that this trial judge did not exceed his discretion when he did not hear oral argument before deciding the merits of defendant's petition.

We are unable to agree fully with either party. While we decline to hold as a matter of law that each defendant has a right to present oral argument to the trial judge in support of a petition for post-conviction relief, we are also satisfied that this defendant was entitled to oral argument, and we thus reverse and remand for further proceedings.

## IV.

We note first the standard governing our review of the parties' contentions. The issue before us—whether and to what extent a defendant is entitled to present oral argument in support of his petition for post-conviction relief—is a question of law. Our review is thus de novo. *State v. Handy*, 206 *N.J.* 39, 45, 18 *A.*3d 179 (2011). We need not afford deference to the conclusions reached by the trial judge and the appellate panel. *Ibid.*

## V.

Although the principles governing any analysis of a defendant's petition for post-conviction relief are well known and not contested before us, we consider it important to set forth a brief synopsis of them for those same principles inform our analysis of the role of oral argument in such matters.

## A.

Although post-conviction relief proceedings have been characterized for certain purposes as being civil in nature, *State v. Loray*, 46 *N.J.* 417, 419, 217 *A.*2d 450 (1966), they play a critical role in our criminal justice system. A petition for post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. *State v. Afanador*, 151 *N.J.* 41, 49, 697 *A.*2d 529 (1997). "It is a safeguard to ensure that a defendant was not unjustly convicted." *Ibid.* (citing *State v. McQuaid*, 147 *N.J.* 464, 482, 688 *A.*2d 584 (1997)). A petition for post-conviction relief "is a defendant's last chance to raise constitutional error that may have

affected the reliability of his or her criminal conviction." *State v. Rue,* 175 *N.J.* 1, 18, 811 *A.*2d 425 (2002); *see also State v. Loftin,* 191 *N.J.* 172, 197, 922 *A.*2d 1210 (2007) (noting post-conviction relief petition is defendant's last opportunity to raise constitutional challenge to fairness and reliability of criminal verdict).

■ We recently reiterated the significance of a petition for post-conviction relief and stressed that a hearing on such a petition " 'is not a *pro forma* exercise, but a meaningful procedure' to root out mistakes that cause an unjust result either in a verdict or sentence." *State v. Hess,* 207 *N.J.* 123, 144–45, 23 *A.*3d 373 (2011) (quoting *State v. Feaster,* 184 *N.J.* 235, 249, 877 *A.*2d 229 (2005)).

### B.

■ When a defendant contends in a petition for post-conviction relief that he was deprived of his Sixth Amendment right to the effective assistance of counsel, the trial judge assigned to handle defendant's petition views those contentions against a well-settled standard, one that is identical under both the United States Constitution and the New Jersey Constitution. *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987).

■ The defendant must demonstrate first that counsel's performance was deficient, i.e., that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984). In making that demonstration, a defendant must overcome a strong presumption that counsel rendered reasonable professional assistance. *Id.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694; *State v. Hess, supra,* 207 *N.J.* at 147, 23 *A.*3d 373; *State v. Castagna,* 187 *N.J.* 293, 314, 901 *A.*2d 363 (2006).

A showing of deficient performance, standing by itself, is insufficient. In addition, a defendant must also establish that the ineffectiveness of his attorney prejudiced his defense. "The de-

fendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698; *Hess, supra,* 207 *N.J.* at 146, 23 *A.*3d 373; *State .v. Winder,* 200 *N.J.* 231, 254–55, 979 *A.*2d 312 (2009). If defendant establishes one prong of the *Strickland–Fritz* standard, but not the other, his claim will be unsuccessful. *State v. Echols,* 199 *N.J.* 344, 358, 972 *A.*2d 1091 (2009) ("Unless both parts of the test are established, defendant's claim must fail."); *State v. Allegro,* 193 *N.J.* 352, 366, 939 *A.*2d 754 (2008) (observing two elements must coalesce to sustain ineffective assistance of counsel claim).

## C.

Having reviewed those underlying principles, we turn to the particulars of the present matter. In weighing the parties' respective arguments, we consider *Rue, supra,* to be instructive. In that case, we reviewed the historical development of *Rule* 3:22, which governs post-conviction relief proceedings, and in particular, *Rule* 3:22–6(a), under which an indigent defendant is entitled to counsel in connection with his first post-conviction relief petition as a matter of right. *Rue, supra,* 175 *N.J.* at 15–18, 811 *A.*2d 425. We contrasted that with the procedure followed in other jurisdictions, which require a threshold determination that a defendant's arguments bear some merit before counsel is assigned to that defendant. *Id.* at 15–17, 811 *A.*2d 425. We noted that our choice in this regard "was obviously motivated by our view of the critical nature of the faithful and robust representation of a defendant" seeking post-conviction relief. *Id.* at 18, 811 *A.*2d 425.

*Rule* 3:22 contains no explicit statement with respect to whether a defendant is entitled to present oral argument in support of his petition for post-conviction relief. There are two reported decisions of the Appellate Division that have commented on this omission. Each panel had a different emphasis and reached differing results.

In *State v. Flores*, 228 *N.J.Super.* 586, 588, 550 *A.*2d 752 (App.Div.1988), *certif. denied*, 115 *N.J.* 78, 556 *A.*2d 1220 (1989), the defendant was convicted at trial of aggravated manslaughter and possession of a sawed-off shotgun and sentenced to an aggregate term of nineteen years. After his conviction and sentence were affirmed on direct appeal and this Court denied certification, the defendant filed a timely petition for post-conviction relief in which he elected to represent himself. *Id.* at 589, 550 *A.*2d 752. His petition focused primarily on challenges to the sentence he had received, and the trial judge denied the petition after reviewing the papers. *Ibid.* The appellate panel rejected the defendant's argument that the trial court had erred in disposing of the matter on the papers, noting that while it had no "doubt that it was within the power of the court to require oral argument, we discern no statutory or procedural provision compelling it to adopt this course." *Id.* at 590, 550 *A.*2d 752. It affirmed the order of the trial judge that denied post-conviction relief. *Id.* at 597, 550 *A.*2d 752.

In *State v. Mayron*, 344 *N.J.Super.* 382, 384, 782 *A.*2d 437 (App.Div.2001), the defendant was convicted at trial of murder and kidnapping and sentenced to life in prison for murder, with a thirty-year period of parole ineligibility and a consecutive thirty years in prison with a fifteen-year period of parole ineligibility on the kidnapping conviction. His conviction and sentence were affirmed on direct appeal, and certification was denied. *Ibid.* The defendant thereafter filed a timely petition for post-conviction relief, asserting several grounds for his claim that he had been denied the effective assistance of counsel during his trial. *Ibid.* The trial judge denied the defendant's petition based solely on a review of the papers, without having heard oral argument. *Id.* at 385, 782 *A.*2d 437. The appellate panel noted the absence of a specific directive within *Rule* 3:22 with respect to oral argument and concluded that the decision whether to grant oral argument on a petition for post-conviction relief rested "within the sound discretion of the post-conviction relief court." *Id.* at 386–87, 782 *A.*2d 437.

Although this view is in accord with *Flores, supra,* the appellate panel in *Mayron* continued, however, that "there should be a significant presumption in favor of oral argument [i]n light of what is at stake for a defendant[.]" *Id.* at 387, 782 *A.*2d 437. It observed that "[t]he issues at stake on an initial petition for post-conviction relief are no less significant than those typically presented when the court rules ensure oral argument." *Id.* at 386, 782 *A.*2d 437. It noted several factors that a trial judge should weigh when deciding whether to hear oral argument or to dispense with it. It included within those factors "the apparent merits and complexity of the issues ..., whether argument of counsel [would] add to the written positions ..., and in general, whether the goals and purposes of the post-conviction procedure are furthered by oral argument." *Id.* at 387, 782 *A.*2d 437. It thus declined to address the substantive merits of the defendant's arguments with respect to whether he was entitled to post-conviction relief and remanded the matter to the trial court for the purpose of that oral argument. *Id.* at 388, 782 *A.*2d 437.

Although we agree that those are appropriate factors and recognize the residuum of discretion that rests within our trial judges in weighing those factors, we stress that in considering each, they should be approached with the view that oral argument should be granted. Just as when determining whether a defendant is entitled to an evidentiary hearing in connection with his petition for post-conviction relief the facts should be "view[ed] in the light most favorable to a defendant," *State v. Preciose,* 129 *N.J.* 451, 463, 609 *A.*2d 1280 (1992), so too, in determining whether to entertain oral argument, the facts should be viewed through the same generous lens.

Further, when the trial judge does reach the determination that the arguments presented in the papers do not warrant oral argument, the judge should provide a statement of reasons that is tailored to the particular application, stating why the judge considers oral argument unnecessary. A general reference to the issues not being particularly complex is not helpful to a reviewing court

when a defendant later appeals on the basis that the denial of oral argument was an abuse of the trial judge's discretion.

We address one final procedural matter before turning to the particulars of defendant's petition and whether the trial judge should have heard oral argument before ruling on its merits. We have noted our agreement with the statement in *Mayron, supra,* that there is a strong presumption in favor of oral argument in connection with an initial petition for post-conviction relief. Defendant and his attorney were entitled to rely on the existence of such a presumption in preparing their papers, and thus we consider it of no moment that the papers did not contain a specific request for oral argument.

### D.

From our review of the record, it is apparent to us that the trial judge did not accord defendant the benefit of the presumption in favor of oral argument. We reach this conclusion for several reasons. We set forth certain of the deficiencies we perceive in the approach adopted by the trial judge, not to criticize the judge but to illustrate the need for an expansive approach to the assessment of such petitions.

We note, for instance, that the trial judge included in his statement of reasons denying defendant's petition that defendant had not included any affidavits or certifications to support his claim that he acted out of fear of Polo Mike. Defendant did, however, attach to his papers the sworn statements that he and Paige gave to the police when they were questioned with respect to Fletcher's death. Those sworn statements set forth in detail the facts underlying his claim of duress. Defendant had sworn once to the truth of that statement; we are unable to perceive what policy is furthered by requiring him to set forth the same statement in a second writing and again swear to its truthfulness.

We note also that the trial judge concluded that defendant would, in any event, be unable to satisfy the second prong of the

Strickland–Fritz test because duress would serve to reduce a murder charge to manslaughter, and defendant had pled to manslaughter. This conclusion, however, was misplaced. Defendant had pled guilty to aggravated manslaughter, a crime of the first degree, not manslaughter under *N.J.S.A.* 2C:11–4(b), which is a crime of the second degree. *N.J.S.A.* 2C:11–4(c). There is, of course, a significant difference in the sentencing exposure of a defendant who pleads guilty to a first-degree crime and one who pleads guilty to a second-degree crime.

We noted earlier that one of defendant's claims with respect to ineffective assistance of counsel was that his attorney had not attempted to negotiate a more favorable plea bargain for him in exchange for defendant's cooperation with the police in a prosecution of Polo Mike. The trial judge dismissed this claim with the observation that there were no charges pending against Polo Mike at the time, and thus there was no prosecution with which defendant could cooperate. However, in this context, an offer of cooperation need not be restricted to a pending criminal charge; it can extend to helping the police build a case for a future prosecution. We stress that we are not determining that there is substantive merit to defendant's claim with respect to this issue, and we are not unmindful that offers of cooperation may shrivel when an individual ponders the potential for retaliation. We are satisfied, however, that the trial judge took too narrow a view of defendant's argument. Defendant was entitled to have his attorney press that argument orally, to the extent that the attorney could.

## VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and WEFING (temporarily assigned)—6.