NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1426-14T2
STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JOHN M. KING, a/k/a JOHNATHAN BLAKNEY,
MARCUS KING, MARCUIS KING, JOHN
MONTRELL KING and JONATHAN BLAKNE,

 Defendant-Appellant.
—————————————————————————————————

 Submitted May 25, 2017 – Decided August 2, 2017

 Before Judges Hoffman and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Bergen County, Indictment No.
 98-05-0955.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Kimmo Abbasi, Designated
 Counsel, on the brief).

 Gurbir S. Grewal, Bergen County Prosecutor,
 attorney for respondent (Elizabeth R. Rebein,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant John King appeals from the Law Division order

denying his petition for post-conviction relief (PCR) without an

evidentiary hearing. He argues his trial counsel provided
ineffective assistance because he failed to investigate the

credibility of Sergeant Gary Griffith's account of his arrest.

Defendant presented the PCR court with a report directly

contradicting Sergeant Griffith's account of how and why he pulled

defendant over. If the trial court had found Sergeant Griffith

not credible, the State would not have met its burden to admit

defendant's cocaine and his admission it belonged to him. We

therefore vacate the order denying PCR and remand for an

evidentiary hearing.

 I.

 We have based the following description of defendant's arrest

on testimony from the suppression hearing because his appeal

focuses on his legal representation during this hearing. On

November 23, 1997, Sergeant Griffith of the Port Authority Police

worked the 3 p.m. to 11 p.m. shift, assigned to the post at the

Palisades Parkway Toll Plaza near the George Washington Bridge.

During his shift, he periodically patrolled the bridge. At

approximately 9:30 p.m., Sergeant Griffith started driving to New

Jersey from the New York side of the bridge. Traveling in the

rightmost lane, he noticed another vehicle 300 yards ahead passing

others at a "higher rate of speed." He approached the vehicle

about midway over the bridge and matched his speed with the

vehicle's for approximately three-tenths of a mile. His

 2 A-1426-14T2
speedometer read fifty-eight miles per hour, thirteen miles per

hour over the speed limit.

 On cross-examination at the suppression hearing, defense

counsel asked Sergeant Griffith how he caught up to the vehicle

at the midway point of a 3,000 foot bridge if he started 900 feet

behind it. Asked if he was going "about 90, 100 miles an hour to

catch up to" the vehicle, Sergeant Griffith responded, "I – I

don't – don't think so." Defense counsel then asked, "[Y]ou saw

that . . . at 9:30 at night on a November night, you saw a car 900

feet ahead of you, you could see that he was passing cars at a

high rate of speed." Sergeant Griffith replied, "That's correct."

Defense counsel then asked, "900 feet away . . . the length of the

Intrepid, you could see a beige Toyota passing other cars at a

high rate of speed, right?" Sergeant Griffith responded, "I didn't

know what kind of car it was until I pulled the vehicle over;"

nevertheless, he maintained his claim he saw the subject vehicle

passing cars at a high rate of speed from 900 feet away.

 After pacing the subject vehicle for approximately three-

tenths of a mile, Sergeant Griffith signaled for the driver to

pull over. The vehicle stopped under a nearby overpass. Sergeant

Griffith stopped his car behind the vehicle and noticed two people

in the car, one in the driver's seat and one in the front

passenger's seat. He approached the driver's side from behind and

 3 A-1426-14T2
asked the driver for his license, registration, and insurance

card. The driver produced his New Jersey driver's license and a

rental agreement. During this exchange, Sergeant Griffith used

his flashlight to illuminate the vehicle and the driver. He

noticed the driver's "eyes were dilated," and his "pupils were

very, very sluggish." Sergeant Griffith did not smell any alcohol,

but based on his training and experience, the driver "was possibly

under some type of narcotic."

 Sergeant Griffith asked the driver to exit the vehicle because

he "wanted to see if he had any other disabilities." As the driver

exited the vehicle, he was "very unsteady [on] his feet, . . .

swaying a little bit, sagging his knees." Sergeant Griffith

concluded the driver was "under the influence of some kind of

controlled substance." He consequently told him that he was under

arrest and read his Miranda rights to him. He then handcuffed

him, frisked him for weapons, and placed him in his patrol car.

 Sergeant Griffith approached defendant, seated in the front-

passenger seat. From his experience, "if you have one or two

people in the vehicle[,] there's always a possibility of finding

narcotics or another person being under the influence of

narcotics." He asked defendant "his name[] and where he was coming

from." Defendant said his name was "Jonathan Blakeney," and he

was "coming from the [c]ity." Sergeant Griffith asked for

 4 A-1426-14T2
identification, but defendant said he did not have any. Sergeant

Griffith did not smell any alcohol; when he used his flashlight

to illuminate defendant's face, he noticed his pupils were very

dilated and "sluggish" to react to the light. Sergeant Griffith

described defendant as "very hyper, talked very fast[,] and then

he started to open his pants," while saying, "I ain't got nothing

on me." Sergeant Griffith told him to stop; based on his training

and experience, he believed defendant was trying to divert his

attention from something.

 As a result, Sergeant Griffith asked defendant to exit the

vehicle. When he got out of the vehicle, defendant "was very

unsteady on his feet, swaying, sagging." Sergeant Griffith

"believed that he was under the influence of a controlled dangerous

substance," and therefore arrested him and read him his Miranda

rights. When Sergeant Griffith patted down defendant for weapons,

he felt something "right behind his belt buckle in his back inside

his shirt area." Sergeant Griffith consequently removed the object

from behind his belt buckle and found a brown paper bag containing

"a couple of clear plastic bags with white rock and . . . off-

white rock." He believed the rocks were cocaine and crack cocaine

and told defendant he was under arrest for possession of a

controlled substance.

 5 A-1426-14T2
 At the police station, the driver and defendant produced a

urine sample upon request. Defendant's sample did not show any

controlled dangerous substances. The white rocks tested positive

for cocaine and weighed 8.85 ounces. Sergeant Griffith reread

defendant his Miranda rights, and defendant admitted the cocaine

belonged to him.

 A grand jury returned an indictment charging defendant with

first-degree possession of cocaine with intent to distribute,

N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count one), and

third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count

two). Defendant filed a motion to suppress the cocaine and his

admission. The trial court denied the motion.

 At trial, the State presented two witnesses, Sergeant

Griffith and a police detective, who provided expert testimony

regarding intent to distribute the cocaine. The jury found

defendant guilty of both charges. The trial court sentenced

defendant to an extended prison term of twenty-five years, with a

ten-year period of parole ineligibility.

 Defendant appealed his conviction and we affirmed. State v.

King, No. A-4512-04 (App. Div. Feb. 6, 2007). The New Jersey

Supreme Court denied his petition for certification. State v.

King, 192 N.J. 70 (2007).

 6 A-1426-14T2
 On December 20, 2007, defendant filed the petition under

review. PCR counsel retained a private investigator to determine

whether Sergeant Griffith could have seen a vehicle 900 feet away

on the bridge and then caught up to it before the middle of the

bridge. The investigator previously worked as a police officer

for four years and as an investigator for twenty-four years.

According to the investigator, the bridge is "4,760 feet long or

approximately [nine-tenths] of a mile." Retracing Sergeant

Griffith's path returning to New Jersey on the bridge, and "[g]iven

the relative position of the vehicles and the slope of the bridge,"

the investigator was "unable to see anything 300 yards forward of

[his] position and conclude[d] that it is not possible to do so."

 Defendant also obtained an email from an ophthalmologist.

The email stated:

 There are many causes of pupillary dilation
 with the vast majority of causes from
 pharmacologic agents. Over the counter cold
 medications, decongestants and appetite
 suppressants are perhaps the most common
 causes. There are also many prescription
 medications that can cause pupillary dilation.
 Illicit drugs such as amphetamines and cocaine
 can cause dilation in addition to various
 dilating drops used in our clinical practice.
 From an external examination using direct
 illumination, it would be extremely difficult
 to determine the actual cause of dilation
 (over the counter medications versus illicit
 drugs) without formal laboratory
 investigation.

 7 A-1426-14T2
 Defense counsel also filed a supplemental brief in support

of defendant's petition. On March 8, 2011, without hearing oral

argument, the PCR court issued a written opinion, denying

defendant's petition without an evidentiary hearing. On November

12, 2014, defendant filed a motion to file notice of appeal as

within time; we granted defendant's motion on December 9, 2014.

 Defendant presents the following arguments for our

consideration:

 POINT ONE

 THE PCR COURT ERRED IN DENYING [DEFENDANT] AN
 EVIDENTIARY HEARING DESPITE THE FACT THAT
 [DEFENDANT] PRESENTED A PRIMA FACIE CASE OF
 INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE
 COUNSEL.

 A. Trial Counsel Was Ineffective In Failing
 To Conduct A Thorough Investigation Into The
 Facts of The Case.

 B. Trial And Appellate Counsel Were
 Ineffective In Failing To Present The Argument
 That The Stop of the Vehicle Was A Case of
 Racial Profiling.

 POINT TWO

 THE PCR COURT ERRED IN DENYING [DEFENDANT'S]
 PETITION FOR POST-CONVICTION RELIEF AS TRIAL
 AND APPELLATE COUNSEL FAILED TO ARGUE AT TRIAL
 AND ON APPEAL THAT [DEFENDANT'S] ARREST WAS
 WITHOUT PROBABLE CAUSE AND IN VIOLATION OF HIS
 CONSTITUTIONAL RIGHTS.

 POINT THREE

 THE PCR COURT ERRED IN DENYING [DEFENDANT'S]
 PETITION FOR POST-CONVICTION RELIEF AS TRIAL
 8 A-1426-14T2
 COUNSEL'S PERFORMANCE AT TRIAL WAS DEFICIENT
 AND PREJUDICED [DEFENDANT'S] RIGHT TO A FAIR
 TRIAL.

 POINT FOUR

 THE PCR COURT ERRED IN DENYING [DEFENDANT'S]
 PETITION FOR POST-CONVICTION RELIEF WITHOUT
 AFFORDING PCR COUNSEL THE OPPORTUNITY TO
 PRESENT ORAL ARGUMENT.

 II.

 Because the PCR court did not conduct an evidentiary hearing,

we "conduct a de novo review." State v. Harris, 181 N.J. 391, 421

(2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed.

2d 898 (2005). To show ineffective assistance of counsel, a

defendant must satisfy the two-pronged test of Strickland v.

Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),

and adopted in State v. Fritz, 105 N.J. 42 (1987). "The defendant

must demonstrate first that counsel's performance was deficient,

i.e., that 'counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment.'" State v. Parker, 212 N.J. 269, 279 (2012) (quoting

Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed.

2d at 693). The defendant must overcome a "strong presumption

that counsel rendered reasonable professional assistance." Ibid.

(quoting Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065,

80 L. Ed. 2d at 694). Second, "a defendant must also establish

that the ineffectiveness of his attorney prejudiced his defense.
 9 A-1426-14T2
'The defendant must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" Id. at 279-80 (quoting

Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed.

2d at 698).

 The United States and New Jersey Constitutions permit a brief

investigative stop of a vehicle based on reasonable suspicion

"that an offense, including a minor traffic offense, has been or

is being committed." State v. Amelio, 197 N.J. 207, 211 (2008)

(quoting State v. Carty, 170 N.J. 632, 639-40, modified by 174

N.J. 351 (2002)), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402,

173 L. Ed. 2d 1297 (2009). An investigatory stop "is valid if it

is based on specific and articulable facts which, taken together

with rational inferences from those facts, give rise to a

reasonable suspicion of criminal activity." State v. Mann, 203

N.J. 328, 338 (2010) (quoting State v. Pineiro, 181 N.J. 13, 20

(2004)). "The burden is on the State to demonstrate by a

preponderance of the evidence that it possessed sufficient

information to give rise to the required level of suspicion."

Amelio, supra, 197 N.J. at 211.

 Reasonable suspicion of "[a] motor vehicular violation, no

matter how minor, justifies a stop [even] without any reasonable

suspicion that the motorist has committed a crime or other unlawful

 10 A-1426-14T2
act." State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div.

2011). "To satisfy the articulable and reasonable suspicion

standard, the State is not required to prove that the suspected

motor-vehicle violation occurred." State v. Locurto, 157 N.J.

463, 470 (1999). That is, "the State need prove only that the

police lawfully stopped the car, not that it could convict the

driver of the motor-vehicle offense." State v. Heisler, 422 N.J.

Super. 399, 413 (App. Div. 2011) (quoting State v. Williamson, 138

N.J. 302, 304 (1994)). Also, the State must show an officer had

an objectively reasonable belief a traffic violation occurred.

State v. Puzio, 379 N.J. Super. 378, 383 (App. Div. 2005).

However, the "fact that information an officer considers is

ultimately determined to be inaccurate . . . does not invalidate

a seizure." State v. Pitcher, 379 N.J. Super. 308, 318 (App. Div.

2005), certif. denied, 186 N.J. 242 (2006).

 A PCR court need not grant an evidentiary hearing unless "a

defendant has presented a prima facie [case] in support of post-

conviction relief." State v. Marshall, 148 N.J. 89, 158

(alteration in original) (quoting State v. Preciose, 129 N.J. 451,

462 (1992)), cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L.

Ed. 2d 88 (1997). "To establish such a [prima facie] case, the

defendant must demonstrate a reasonable likelihood that his or her

claim will ultimately succeed on the merits." Ibid. The court

 11 A-1426-14T2
must view the facts "in the light most favorable to defendant."

Ibid. (quoting Preciose, supra, 129 N.J. at 462-63); accord R.

3:22-10(b).

 Defendant argues his "trial counsel failed to adequately

investigate the case." He explains, "[A]ny meaningful

investigation would have demonstrated that what Officer Griffith

testified to was improbable, if not impossible." Considering the

private investigator's report "in the light most favorable to

defendant," Ibid. (quoting Preciose, supra, 129 N.J. at 462-63),

we agree and remand for an evidentiary hearing.

 The private investigator's report directly contradicts

Sergeant Griffith's suppression hearing testimony at the

suppression hearing. In order to admit the cocaine and defendant's

confession into evidence, the trial court had to find Sergeant

Griffith had a reasonable suspicion the vehicle violated a motor

vehicle law or the occupants had violated some other law, before

he pulled over the vehicle. See Bernokeits, supra, 423 N.J. Super.

at 370. Considering Sergeant Griffith's explanation of the

circumstances causing him to stop the vehicle and the report of

defendant's investigator, the record shows "a reasonable

probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.'" Parker,

 12 A-1426-14T2
supra, 212 N.J. at 279-80 (quoting Strickland, supra, 466 U.S. at

694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).

 Assuming the truth of the private investigator's report,

trial counsel's failure to investigate the credibility of Sergeant

Griffith's basis for pulling over the vehicle was unreasonable,

because any reasonable jury would convict defendant once the trial

court admitted the cocaine and his confession. Defendant's defense

centered on the suppression of the drugs and defendant's

confession. Without investigating the credibility of Sergeant

Griffith's account of why and how Sergeant Griffith arrested him,

his counsel was not functioning as the "'counsel' guaranteed the

defendant by the Sixth Amendment." Parker, supra, 212 N.J. at 279

(quoting Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064,

80 L. Ed. 2d at 693).

 Defendant also argues the PCR court should have considered

the email from the ophthalmologist. We disagree. N.J.R.E. 702

and 703 frame this court's analysis for determining the

admissibility of expert testimony. N.J.R.E. 702 identifies when

expert testimony is permissible and requires the experts to be

qualified in their respective fields. N.J.R.E. 703 addresses the

foundation for expert testimony. Expert opinions must "be grounded

in 'facts or data derived from (1) the expert's personal

observations, or (2) evidence admitted at the trial, or (3) data

 13 A-1426-14T2
relied upon by the expert which is not necessarily admissible in

evidence but which is the type of data normally relied upon by

experts.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting

Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).

 "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . .

which forbids the admission into evidence of an expert's

conclusions that are not supported by factual evidence or other

data.'" Id. at 53-54 (alteration in original) (quoting Polzo,

supra, 196 N.J. at 583). Therefore, an expert is required to

"'give the why and wherefore' that supports the opinion, 'rather

than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle

River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). The net

opinion rule directs "that experts 'be able to identify the factual

bases for their conclusions, explain their methodology, and

demonstrate that both the factual bases and the methodology are

reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127

N.J. 404, 417 (1992)). In short, the net opinion rule is "a

prohibition against speculative testimony." Harte v. Hand, 433

N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer,

301 N.J. Super. 563, 580 (App. Div. 1997), certif. denied, 154

N.J. 607 (1998)). The email lacks any reference to the facts of

this case, so it is a "net opinion." Townsend, supra, 221 N.J.

36, 53-54 (quoting Polzo, supra, 196 N.J. at 583).

 14 A-1426-14T2
 Defendant further argues the email shows Sergeant Griffith

lacked probable cause to arrest defendant "based solely on the

appearance of dil[a]ted pupils when a flashlight was flashed at

their eyes." The record does not support defendant's argument

because Sergeant Griffith arrested him only after he asked him to

exit the vehicle and saw he "was very unsteady on his feet,

swaying, sagging."

 Defendant next argues, "[B]oth his trial and appellate

counsel were ineffective in failing to argue that the stop of the

vehicle . . . was a result of racial profiling." We disagree.

Nothing in the trial or appellate record supports an argument that

Sergeant Griffith was racially motivated to pull the vehicle over,

so defendant's trial and appellate counsel reasonably declined to

raise the argument. See Parker, supra, 212 N.J. at 279 (quoting

Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed.

2d at 694).

 Defendant contends his trial and appellate counsel should

have argued Sergeant Griffith arrested him without probable cause

that he was under the influence of a controlled dangerous

substance. Again, we disagree. N.J.S.A. 2C:35-10(b) states, "Any

person who uses or who is under the influence of any controlled

dangerous substance, or its analog, for a purpose other than the

 15 A-1426-14T2
treatment of sickness or injury as lawfully prescribed or

administered by a physician is a disorderly person."

 Sergeant Griffith observed defendant had dilated pupils that

reacted slowly to light. Based on his training and experience,

this was consistent with the use of controlled dangerous

substances. Sergeant Griffith also noticed defendant was "very,

very . . . hyper," and defendant then inexplicably began to open

his pants. When Sergeant Griffith asked defendant to exit the

vehicle, he observed defendant "very unsteady on his feet, swaying,

sagging" after he exited the vehicle. Sergeant Griffith's training

and experience told him that defendant's behavior was consistent

with the use of controlled dangerous substances. Defendant's

actions gave Sergeant Griffith probable cause to believe he was

under the influence of a controlled dangerous substance, contrary

to N.J.S.A. 2C:35-10(b). Defendant's trial and appellate counsel

reasonably declined to raise this argument. See Parker, supra,

212 N.J. at 279 (quoting Strickland, supra, 466 U.S. at 689, 104

S. Ct. at 2065, 80 L. Ed. 2d at 694).

 Defendant's third point simply restates his first two in

general terms. He writes, "[T]rial counsel inadequately

investigated and prepared for trial. In particular, . . . trial

counsel was ineffective in failing to prepare a meaningful attack

on the credibility of the arresting officer." We agree with

 16 A-1426-14T2
defendant insofar as the PCR court should have held an evidentiary

hearing to determine whether defendant's trial counsel should have

investigated whether Sergeant Griffith had reasonable suspicion

to pull over the vehicle, as the private investigator's report

disputes. After the trial court admitted the cocaine and

defendant's admission, any attack on Sergeant Griffith's

credibility would not have had a reasonable probability of changing

the result of the trial. See Parker, supra, 212 N.J. at 279-80

(quoting Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068,

80 L. Ed. 2d at 698). We decline to adopt defendant's broader

argument.

 Defendant's final point asserts the PCR court erred by denying

his petition without affording PCR counsel the opportunity to

present oral argument. We agree. As we previously noted in State

v. Mayron, 344 N.J. Super. 382, 385-87 (App. Div. 2001), "[w]hether

oral argument before the [PCR] court is necessary and appropriate

is currently left to the sound discretion of that court[;]"

however, "that discretion should be generally exercised in favor

of oral argument." In Parker, supra, 212 N.J. at 283, our Supreme

Court noted its "agreement with the statement in Mayron . . . ,

that there is a strong presumption in favor of oral argument in

connection with an initial petition for post-conviction relief."

 Vacated and remanded. We do not retain jurisdiction.

 17 A-1426-14T2
18 A-1426-14T2