**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0505-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDGAR TORRES,

    Defendant-Appellant.

_____

> Submitted September 26, 2018 – Decided October 9, 2018
>
> Before Judges Koblitz and Currier.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 12-09-1539.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Robert Carter Pierce, Designated Counsel; William Welaj, Designated Counsel, on the brief).
>
> Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Edgar Torres appeals from the August 29, 2017 denial of his petition for post-conviction relief (PCR) without a plenary hearing. A jury convicted defendant of three counts of first-degree robbery, N.J.S.A. 2C:15-1, and three counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). He was sentenced to an aggregate forty-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant's convictions were affirmed by this court in an unpublished opinion. State v. Torres, No. A-3096-12 (App. Div. May 7, 2015). The New Jersey Supreme Court denied certification. State v. Torres, 223 N.J. 556 (2015). Because defendant did not demonstrate a prima facie case, we affirm.

In our opinion on appeal we discussed the underlying facts developed at trial:

> From December 2010 to February 2011, three armed robberies occurred at banks in Howell Township and Ocean Township during which a male suspect with a gun entered each bank and demanded cash. During their investigation, police found the suspected getaway car – a white two-door Honda – parked near a Howell townhouse. Police also determined that a man fitting the suspect's description, and later identified as defendant, had recently used the vehicle.
>
> On February 25, 2011, during surveillance of the townhouse, police observed a woman, later identified

as the Honda's registered owner, drop a toddler off and leave. At approximately 2:45 p.m., officers observed another woman, later identified as Migdalia Torres, mother of the Honda's owner, exit the townhouse and drive away in the Honda. Police observed Migdalia driving to Asbury Park, where she engaged in a narcotics transaction. At 3:48 p.m., police stopped the Honda near the Howell townhouse. Migdalia told police she had just purchased and used heroin; she acknowledged there was heroin in the vehicle.

During this stop, Migdalia told officers she was the lessee of the Howell townhouse and her boyfriend, whom she identified as defendant, "sometimes stayed there with her." She described herself as financially independent and asserted that defendant did not contribute to the household bills. Migdalia also informed police that her daughter owned the Honda, and defendant was alone inside the townhouse with Migdalia's three-year-old grandson. When police did not find in the Honda the gun suspected of being used in the bank robberies, officers turned their suspicions about the location of the gun to the townhouse; they also purported to be concerned for the child's safety in light of the possibility that the weapon was in the townhouse. According to police, Migdalia stated she "wanted the handgun out of the residence, and . . . would be more than willing to permit [police] to search the residence for any other evidence."

With Migdalia's cooperation, police developed and executed a plan to get defendant out of the townhouse. Migdalia telephoned defendant and asked him to come outside under the guise the vehicle had broken down. Defendant walked out of the residence alone within "seconds to minutes" of the phone call, where, at approximately 4:15 p.m., he was apprehended.

3

Defendant asked why he was being arrested and officers advised there were two outstanding warrants for his arrest and that they were also investigating his involvement in several recent bank robberies. The officers asked defendant, either just before or just after he was ushered into a police car – but indisputably before he was read his Miranda[1] rights – whether there was a weapon in the townhouse and who was present inside. Defendant confirmed the three-year old was alone inside, and he stated "the weapon was not real, and . . . that [the police] could retrieve it from a second story bedroom where it was located inside . . . a blue basket."

Two police officers then entered the townhouse and found the child alone in a bedroom watching television. In addition to securing the child, the officers "did a preliminary search of the residence solely for any additional occupants or suspects, but [] did not search for any evidence." At 4:25 p.m., Migdalia executed a written consent to search the townhouse for "any items of evidential value." During the search, officers recovered a black pellet gun as well as several items of clothing, including a jacket, a sweatshirt, and a hat, consistent with descriptions of the robbery suspect's clothing.

Meanwhile, defendant was transported to the Howell Township Police department. Upon arrival, at approximately 5:13 p.m., defendant was read – and, in writing, waived – his Miranda rights. Defendant then made a videotaped statement in which he confessed to three bank robberies and identified himself in photos of those robberies. At 5:29 p.m., defendant executed a written consent to search the Howell townhouse.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0505-17T1

On March 11, 2011, defendant was interviewed again by police. After again being advised of his rights and executing a written Miranda waiver, defendant made a one-hour videotaped statement in which he confessed to two additional Monmouth County bank robberies that occurred in 2006 and 2009.

Prior to trial, Judge Mullaney denied defendant's motion to suppress the evidence seized from the townhouse and motion to suppress the statements he made to police. And, as noted earlier, after a thirteen-day trial, defendant was convicted of three first-degree robberies and three weapons offenses and sentenced to a lengthy prison term.

[Torres, slip op. at 2-6 (alterations in original).]

Six witnesses testified on defendant's behalf. Defendant also took the stand. He testified that he confessed to the robberies to keep Migdalia from going to jail for drug possession. Defendant testified he was told that if he "stepped up to the plate and [said] that [he] was the one that committed these robberies that [the police officer] would keep his promise" and recommend that Migdalia "only receive probation." Defendant further testified that he was able to provide so much detail about the robberies at the police station because the police officers told him about the robberies in the car.

On direct appeal, defendant unsuccessfully raised the following issues:

I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY POLICE.

5

II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE TO POLICE.

III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SEVER AND ORDER SEPARATE TRIALS FOR EACH COUNT OF THE INDICTMENT.

IV. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE UNFAIRLY PREJUDICIAL 404(b) OTHER-ACT EVIDENCE AND IMPROPERLY-AUTHENTICATED PHOTO AND VIDEO EVIDENCE.

V. THE TRIAL COURT ERRED IN PERMITTING THE JURY TO HEAR DEFENDANT'S STATEMENT TO INTERROGATING DETECTIVES THAT HE WAS MOTIVATED TO COMMIT THE BANK ROBBERIES BECAUSE OF DRUGS AND BILLS.

VI. THE TRIAL COURT ERRED IN PERMITTING DEFENDANT'S PRIOR CONVICTIONS TO BE USED AS IMPEACHMENT EVIDENCE BEFORE THE JURY.

VII. THE TRIAL COURT ERRED IN PERMITTING EXPERT TESTIMONY BEFORE THE JURY OF A "CRIME SCENE" EXPERT.

VIII. THE TRIAL COURT ERRED IN DECLINING TO CHARGE THE JURY ON FALSE IN ONE, FALSE IN ALL.

IX. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR ACQUITTAL.

A-0505-17T1

X. THE TRIAL COURT ERRED IN CHARGING LESSER-INCLUDED OFFENSES OVER DEFENDANT'S OBJECTION.

XI. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST TO CHARGE THE JURY ON THIRD-PARTY GUILT.

XII. DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

In his PCR appeal, defendant argues:

POINT I: THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

In a pro se supplemental brief, defendant argues:[2]

POINT I: THE INADEQUATE REPRESENTATION THAT PETITIONER RECEIVED AT PRE-TRIAL AND TRIAL FELL BELOW AN OBJECTIVE REASONABLE STANDARD, THUS VIOLATING PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTION.

A. TRIAL COUNSEL FAILED TO BE PREPARED WITH THE DVDS FOR THE MIRANDA HEARING IN THE PRE-TRIAL STAGES.

_____

[2] We corrected minor typographical errors.

A-0505-17T1

B. TRIAL COUNSEL FAILED TO ADEQUATELY ARGUE CONTRARY TO THE STATE'S CASE IN PETITIONER'S PRE-TRIAL STAGES IN THE MIRANDA HEARING.

C. TRIAL COUNSEL FAILED TO INVESTIGATE A DEFENSE OR EVIDENCE.

D. TRIAL COUNSEL FAILED TO INVESTIGATE WHETHER PETITIONER HAD STANDING IN THE SEARCH OF AND SEIZURE IN 26 NORTH AMERICAN DRIVE, HOWELL, NEW JERSEY.

E. TRIAL COUNSEL FAILED TO ADEQUATELY ADVISE THE JURY IN THE OPENING AS TO MRS. T[]'S[3] STATEMENTS AND BY COUNSEL'S MISQUOTING HER STATEMENT INCRIMINATED PETITIONER.

F. IN THE STATE'S BRIEF THE PROSECUTOR ARGUES THAT PETITIONER'S PCR SHOULD BE AFFIRMED BASED ON THAT PETITIONER WAS UNABLE TO PRESENT THAT THERE WERE WITNESSES WHO WOULD HAVE BEEN FAVORABLE TO HIS CASE THAT WOULD HAVE EXONERATED PETITIONER.

In his brief in support of his PCR petition, defendant, through counsel, argued that he was entitled to an evidentiary hearing because defense counsel did not perform any pretrial investigation and failed to call an unspecified witness.

---

[3] We use initials to preserve the privacy of the witness.

At the hearing on defendant's PCR petition, Judge Scully denied defendant's request for an evidentiary hearing, finding, in pertinent part:

> There is nothing in this brief that states with any level of specificity the specific failures to investigate or what . . . this more thorough investigation would have concluded. In the case at bar the petitioner has made bald assertions of defense counsel's ineffective conduct as trial counsel but has failed in any way to make a prima facie showing whatsoever, nor provide any factual support for the allegations as to the ineffective assistance of counsel.
>
> Petitioner also did not provide a signed amended affidavit or certification stating . . . the . . . reasons based upon his own personal knowledge an evidentiary hearing should be granted pursuant to Rule 3:22-10(c). Hence the petitioner, in this [c]ourt's view, has failed to meet the burden to obtain an evidentiary hearing and consequently any post-conviction relief from the [c]ourt.

A defendant may seek PCR by asserting ineffective assistance of counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). Under the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution, the right to counsel entitles a defendant to the effective assistance of counsel during criminal proceedings. Strickland, 466 U.S. at 685-86; Fritz, 105 N.J. at 58. To establish a violation of the right to effective assistance of counsel, a convicted defendant must satisfy the two-pronged test articulated in Strickland by showing

9

that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687-88; see also Fritz, 105 N.J. at 52-53, 58 (adopting Strickland test in New Jersey). A defendant must establish both prongs of the Strickland standard to have a successful claim of ineffective assistance of counsel. See State v. Parker, 212 N.J. 269, 280 (2012).

Claims of ineffective assistance of counsel frequently require an evidentiary hearing "because the facts often lie outside the trial record and because the attorney's testimony may be required." State v. Porter, 216 N.J. 343, 354 (2013) (quoting State v. Preciose, 129 N.J. 451, 462 (1992)). Evidentiary hearings, however, are not always required. State v. Jones, 219 N.J. 298, 311 (2014); see R. 3:22-10. An evidentiary hearing shall only be granted once the defendant has established a prima facie case of ineffective assistance of counsel. See Porter, 216 N.J. at 354. A defendant establishes a prima facie case of ineffective assistance of counsel by demonstrating a reasonable likelihood of success on the merits. R. 3:22-10(b); see also Strickland, 466 U.S. at 694-95.

Under the first prong of the Strickland test, in order to show that counsel's performance was deficient, a defendant must show that counsel's representation was not objectively reasonable. State v. Pierre, 223 N.J. 560, 578 (2015).

10

An ineffective assistance of counsel claim may arise when counsel fails to conduct an adequate pretrial investigation. Porter, 216 N.J. at 352-53. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Martini, 160 N.J. 248, 266 (1999) (alteration in original) (quoting Strickland, 466 U.S. at 691). "A failure to do so will render [counsel's] performance deficient." State v. Chew, 179 N.J. 186, 217 (2004) (quoting State v. Savage, 120 N.J. 594, 618 (1990)).

A defendant, however, must overcome a strong presumption that counsel rendered reasonable professional assistance. Strickland, 466 U.S. at 689. "[C]omplaints 'merely of matters of trial strategy'" will not establish a valid ineffective assistance of counsel claim. Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Nash, 212 N.J. 518, 543 (2013) ("The test is not whether defense counsel could have done better, but whether he met the constitutional threshold for effectiveness.").

Therefore, a defendant cannot simply make "bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance." Ibid. Thus, a

A-0505-17T1

defendant who alleges that his counsel failed to adequately investigate his case "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification."   Porter, 216 N.J. at 353 (quoting Cummings, 321 N.J. Super. at 170).  We then view the facts asserted in the light most favorable to the defendant.   Ibid.   If, with the facts so viewed, the defendant's claim of ineffective assistance of counsel "has a reasonable probability of being meritorious," the defendant is entitled to an evidentiary hearing.  Jones, 219 N.J. at 311.

Here, defendant argues that because trial counsel "fail[ed] to uncover [favorable] witnesses[,]" trial counsel's only "'ammunition'" at closing argument was to focus on "what he believed to be various inconsistencies and contradictions among the various witnesses who testified for the State in attempting to establish a reasonable doubt in the minds of the jurors."

Before the PCR court, defendant failed to name the favorable witnesses that should have been called, and did not submit affidavits or certifications from any witnesses.  In addition, trial counsel called six witnesses to testify on defendant's behalf, mounting a vigorous defense, which does not support a claim of insufficient pre-trial investigation.

Defendant's pro se supplemental brief claims in Point I (C), for the first time on appeal, that a woman should have been called as an alibi witness. At trial, he was not permitted to testify that he was at home with her child when one of the robberies took place, because he had not submitted a notice of alibi. See R. 3:12-2. Defendant did not provide a certification from the mother stating he babysat on that date.

In his supplemental brief, defendant raises numerous other specific complaints regarding his trial counsel's failures, in points I (A) through (F), none of which were raised before the PCR court. Because these issues were not raised before the PCR court, we will not consider them. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'") (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

A defendant must also satisfy the second prong of the Strickland test. See Parker, 212 N.J. at 280. A defendant must "affirmatively prove prejudice" by showing a "reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." <u>Pierre</u>, 223 N.J. at 583 (quoting <u>Strickland</u>, 466 U.S. at 693-94). Even if trial counsel's errors are professionally unreasonable, a criminal judgment will not be set aside if the error had no effect on the outcome of the case. <u>Strickland</u>, 466 U.S. at 691-92.

Here, significant evidence such as surveillance videos, clothing found at a house where defendant stayed that matched the clothing worn by the robber, and the getaway car parked in front of the home where defendant was staying, linked defendant to the robberies. Defendant also did not deny confessing to the crimes, although he explained to the jury that he was not truthful when he confessed. The evidence favoring conviction was strong.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0505-17T1