**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2855-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PAUL WOZNICA,

    Defendant-Appellant.

_____

Submitted September 12, 2017 — Decided September 28, 2017

Before Judges Leone and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment
Nos. 12-02-0355 and 12-03-0474.

Joseph E. Krakora, Public Defender, attorney
for appellant (Rasheedah R. Terry, Designated
Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor,
attorney for respondent (Susan Berkow, Special
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    After indictment by a Middlesex County Grand Jury, defendant

Paul Woznica pled guilty to one count of third-degree conspiracy

to distribute with the intent to distribute a controlled dangerous substance, N.J.S.A. 2C:5-2(a); three counts of fourth-degree unlawful possession of a stun gun, N.J.S.A. 2C:39-3(h); one count of second-degree unlawful possession of a firearm while committing, attempting to commit, or conspiring to commit a violation of N.J.S.A. 2C:35-5, N.J.S.A. 2C:39-4.1; possessing a controlled dangerous substance with the intent to distribute, N.J.S.A. 2C:39-4.1; and one count of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). He was sentenced in accordance with the plea agreement to twelve years imprisonment with an eight year term of parole ineligibility. He did not pursue a direct appeal, but filed a petition for post-conviction relief (PCR), which was denied on November 18, 2015. He now appeals from the denial of PCR. We affirm.

The following facts are taken from the record. In September 2011, members of the Sayreville Police Department and the Middlesex County Prosecutor's Office Narcotics Task Force were conducting surveillance on two residences located in Sayreville and South Amboy as part of the same investigation. An undercover officer made contact with Samantha Gavron for purposes of purchasing OxyContin. At Gavron's direction, the officer ultimately made contact with Jessica Clark, whom the officer and Gavron met to make a purchase at the South Amboy address. Before the meeting,

members of the surveillance team observed defendant and Clark leave the Sayreville residence and travel in a black Camaro, operated by defendant, to the South Amboy residence where the transaction took place.

In October 2011, the undercover officer contacted Clark and met her at the Sayreville residence to make a second purchase of OxyContin. A third transaction took place in a similar fashion later that month.

On November 4, 2011, officers executed search warrants for the Sayreville residence and the Camaro, as well as Clark and defendant's persons. The warrants produced thirty-six clonazepam pills, three diazepam tablets, eleven alprazolam pills, sixteen bacterium pills, fifteen citalopram pills, fifteen oxycodone pills, fifty grams of marijuana and an unidentified white substance. The search also yielded airsoft guns, BB guns, starter pistols, knives, police batons and stun guns. The Sayreville residence was also equipped with surveillance, including cameras on the roof and a window, and a monitor inside the front door.

After defendant's indictment, his guilty plea and sentencing occurred before the same judge who addressed his subsequent PCR petition. As a part of the sentencing, the judge found three aggravating factors and no mitigating factors. Specifically, the judge found a risk defendant would commit another offense, a prior

record of convictions for serious offenses, and the need to deter him and others from violating the law. After sentencing, defendant filed a PCR petition and now appeals from the denial of PCR, asserting the following arguments:

> POINT I   THE PCR COURT'S ORDER THAT DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF MUST BE REVERSED BECAUSE THE DEFENDANT ESTABLISHED THAT HE PLED GUILTY TO COUNT FOURTEEN OF INDICTMENT NUMBER 12-02-00355 WITHOUT AN ADEQUATE FACTUAL BASIS FOR EACH ELEMENT OF THE OFFENSE OR THE MATTER SHOULD BE REMANDED FOR THE PROPER CONSIDERATION OF THE ISSUE.

> POINT II   THE MATTER SHOULD ALSO BE REMANDED BECAUSE THE PCR COURT ERRONEOUSLY DETERMINED THAT THE ESCAPE VALVE EXCEPTION TO THE GRAVES ACT MINIMUM TERM REQUIREMENT DOES NOT APPLY TO THE SECOND DEGREE UNLAWFUL POSSESSION OF A FIREARM WHILE POSSESSING A CONTROLLED DANGEROUS SUBSTANCE WITH THE INTENT TO DISTRIBUTE CHARGE, N.J.S.A. 2C:39-4.1 (COUNT FOURTEEN).

> POINT III  THE PCR COURT'S ORDER THAT DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF MUST BE REVERSED BECAUSE DEFENDANT CLEARLY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE PROCEEDINGS BELOW.

>> A.   Defense Counsel's Gross Misrepresentation Of The Defendant During The Plea Allocution For Count Fourteen Caused Defendant To Enter Into

An Involuntary, Unknowingly And Unintelligent Guilty Plea.

B.  Defense Counsel's Failure To File A Meritorious Escape Valve Application In Accordance With N.J.S.A. 2C:43-6.2 Prejudiced The Defendant.

C.  Sentencing Counsel Provided Ineffective Assistance Of Counsel When Counsel Failed To Ask The Court To Find Statutory Mitigating Factor, N.J.S.A. 2C:44-1(b)(12).

D.  Defense Counsel Failed To File A Direct Appeal To Challenge Defendant's Convictions And Sentences (Not Raised Below).

E.  PCR Counsel Failed To Fully Raise The Issue Of Prior Counsel's Failure To File An Appeal (Not Raised Below).

POINT IV  THE PCR COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Goodwin, 173 N.J. 583, 593 (2002) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The process affords an adjudged criminal defendant a "last chance to challenge the fairness and reliability of a criminal verdict." State v. Nash, 212 N.J. 518, 540 (2013); see also R. 3:22-1.

"Post-conviction relief is neither a substitute for direct appeal, Rule 3:22-3, nor an opportunity to relitigate cases already decided on the merits, Rule 3:22-5." Preciose, supra, 129 N.J. at 459; see also State v. Echols, 199 N.J. 344, 357 (2009).

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014). Thus, if warranted, we may "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005) (emphasis omitted).

I.

Defendant challenges the PCR court's denial of his request to vacate his plea. Defendant claims his plea colloquy lacked an adequate factual basis for one offense. This claim could have been raised in the trial court or on direct appeal, and thus is barred under Rule 3:22-4(a). However, defendant also alleges his trial counsel was ineffective for not raising the claim. Regardless, defendant cannot meet the standards for ineffectiveness because the claim is meritless.

Defendant challenges his plea to unlawful possession of a firearm while committing or conspiring to commit a violation of

N.J.S.A. 2C:35-5. He argues his plea lacked an adequate factual basis because there was no predicate count charging him with conspiracy, distribution or possession with intent to distribute drugs on November 4, 2011. Defendant argues there was no factual basis established demonstrating he possessed OxyContin with intent to distribute and that he distributed it or agreed to distribute it, because he had a prescription for the medication. Defendant asserts his plea counsel "provided inadequate representation when he propounded an ambiguous and misleading question to him during the plea allocution for Count Fourteen [N.J.S.A. 2C:39-4.1]."

The PCR judge found defendant stated an adequate factual basis that he violated N.J.S.A. 2C:39-4.1. The judge noted the statute requires that defendant possessed a firearm while "committing, attempting to commit or conspiring to commit" a violation of N.J.S.A. 2C:35-5. The judge found defendant acknowledged sufficient facts to constitute the statute's essential elements because he admitted possessing a firearm while conspiring to distribute drugs. We agree and therefore reject his ineffectiveness claim.

To show ineffective assistance of counsel, a defendant must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted in State v. Fritz, 105 N.J. 42, 58 (1987). "The defendant must demonstrate

first that counsel's performance was deficient, i.e., that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" State v. Parker, 212 N.J. 269, 279 (2012) (quoting Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693). The "defendant must overcome a strong presumption that counsel rendered reasonable professional assistance." Ibid. Second, "a defendant must also establish that the ineffectiveness of his attorney prejudiced his defense." Ibid. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 279—80 (quoting Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).

In the context of a guilty plea, defendant must show "that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases,' and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (citations omitted), cert. denied, 516 U.S. 1129, 116 S. Ct. 949, 133 L. Ed. 2d 873 (1996) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985)). Defendant must also show "a decision to reject

the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284, 297; see State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

N.J.S.A. 2C:39-4.1(a) states:

> Any person who has in his possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of . . . N.J.S.2C:35-5, . . . is guilty of a crime of the second degree.

The statute's plain language does not require defendant to plead to a separate violation of N.J.S.A. 2C:35-5 on November 4, 2011. Moreover, defendant's allocution by plea counsel demonstrates he provided an adequate factual basis for a guilty plea under N.J.S.A. 2C:39-4.1.

It is important to note defendant had already admitted conspiring with Clark on an earlier date to distribute Oxycodone out of the Sayreville house in violation of N.J.S.A. 2C:35-5. He engaged in the following colloquy with defense counsel:

> Q: [O]n or about the 29th day of September 2011 do you remember being in the City of South Amboy and/or the Borough of Sayreville . . . ?
> A: Yes.
> Q: And on that day . . . -- were you involved in someone being involved in drug activity that day?
> A: Yes.
> Q: In fact, you were the driver that facilitated the delivery of drugs that day?

> A: Yes.
> Q: And you knew that by driving you were . . . facilitating the drug deal that day?
> A: Yes.
> Q: And that was an agreement you made with the person you were going to drive, that you would provide that transportation for her to do that?
> A: Yes.
> Q: And you realize that's conspiracy to distribute CDS, right?
> A: Yes.

In a colloquy with the prosecutor, defendant clarified that he was conspiring with Clark:

> Q: . . . Who was that other person you were with?
> A: Oh. Jessica Clark.
>  . . . .
> Q: And both Samantha and Jessica had discussed making this sale with you?
> A: Yes.

Defendant's admission he had conspired with Clark to distribute drugs out of the Sayreville house set the stage for the colloquy with defense counsel concerning his violation of N.J.S.A. 2C:39-4.1:

> Q: Now, regarding Count 14, during that search drugs were found in the house?
> A: Yes.
> Q: Specifically Oxycontin?
> A: Yes.
> Q: Which is an illegal -- and you didn't have a prescription for -- a legal prescription for those Oxycontins that were in the house? You were going to sell -- somebody was going to sell or distribute them?
> A: Yes.

> Q: And located in the bedroom of that house was a Daisy BB gun?
> A: Yes.
> Q: And while you didn't know it at the time, you now know that that Daisy BB gun qualifies as a firearm under the laws of the State of New Jersey?
> A: Yes.
> Q: And you acknowledge that you . . . aren't allowed to own a Daisy BB gun in this state, is that correct?
> A: Correct.

In the ensuing discussion of the legality of firearm possession in the home, the trial court intervened to make clear defendant had to admit to "committing, attempting to commit, or conspiring to commit a violation of N.J.S.A. 2C:35-5." N.J.S.A. 2C:39-4.1(a).

> THE COURT: Okay. But the indictment does say ["]did unlawfully knowingly possess a firearm while in the course of committing, attempting to commit, or conspiring to commit["] --
> [DEFENSE COUNSEL]: Okay. Well, Your Honor, I'll clear that up if I can.
> THE COURT: Okay.

Defense counsel then asked about the drug activity:

> Q: Even though it was in your house you understand that when drug activity is involved, under our law firearms are not allowed in the house?
> A: Yes.

The prosecutor followed up:

> Q: And that firearm, that BB gun belonged solely to you?
> A: Yes.

11

```
Q:    And it was located in your bedroom when
the police found it?
A:    Yes.
Q:    And that was the bedroom where you slept?
A:    Yes.
Q:    And nearby were the drugs that you or
others in your house intended to distribute?
A:    Yes.
Q:    And so the weapon and the drugs were both
accessible to you at the same time?
A:    Yes.
```

Thus, defendant admitted to possessing, in his house, a firearm near the OxyContin, which he or someone in the house were going to distribute. Given his earlier admission he conspired to distribute such drugs with Clark out of the same house, his continuing guilty plea after the court's reminder he had to admit conspiring to commit a drug offense, and his subsequent admissions of drug activity in the house and that he or the other occupants had intent to distribute, his colloquy was properly understood as an admission that he was involved in that drug activity and that he was again conspiring with Clark, the other occupant of the house, to distribute the OxyContin.

Defendant admits possessing OxyContin in the house, but claims he had a valid prescription for it. The existence of a valid prescription does not negate the factual basis provided at defendant's plea colloquy. Defendant may have possessed a valid prescription for OxyContin, but he did not have license to sell

it. The PCR court properly denied defendant PCR relief on this claim.

The PCR court also correctly denied defendant's ineffective assistance claim regarding the mechanics of his allocution. Indeed, when taken in context, defendant has not demonstrated his claim the allocution was ambiguous, misleading, and caused him to enter the plea unknowingly.

Furthermore, as the PCR judge noted, the indictment was not deficient, defendant did not qualify for the Graves Act exception, and thus there was,

> no indication, let alone a reasonable probability, that the Defendant would not have pleaded guilty absent his counsel's alleged errors. . . . Had the defendant continued to trial, he would have risked being found guilty of all twenty-one (21) charges in the relevant indictment, which included nine (9) third-degree, and five (5) fourth-degree charges. Considering the significant sentencing exposure that the Defendant would have faced had he been convicted, . . . the Defendant has not established a reasonable probability that he would not have pleaded guilty and insisted on going to trial.

We agree. Defendant's plea allocution and the charges he was facing demonstrate the validity of the plea and the effectiveness of his counsel.

Defendant next challenges his sentence claiming the PCR court erroneously found the Graves Act escape valve exception did not

apply to the <u>N.J.S.A.</u> 2C:39-4.1 charge. We disagree. Because a direct challenge to his sentence is barred by <u>Rule</u> 3:22-4(a), defendant must show his trial counsel was ineffective for failing to seek the Graves Act escape valve. Since defendant had no reasonable probability of qualifying for such relief, this claim lacks merit.

Our Supreme Court has stated:

> The Graves Act provides, generally, that one who uses or possesses a firearm while committing, attempting to commit, or fleeing after the commission of, certain serious offenses specified in that Act shall be mandatorily sentenced to prison for a term that includes at least three years of parole ineligibility. . . . The intent of the Act is manifest: at the very least, to ensure incarceration for those who arm themselves before going forth to commit crimes.
>
> [<u>State v. Des Marets</u>, 92 <u>N.J.</u> 62, 64, 68 (1983).]

We have noted that the Graves Act, specifically <u>N.J.S.A.</u> 2C:43-6.2, provides a so-called "'escape valve' for the extraordinary cases where the mandatory three-year ineligibility term was not in the 'interests of justice.'" <u>State v. Alvarez</u>, 246 <u>N.J. Super.</u> 137, 145 (App. Div. 1991). We also have stated:

> <u>N.J.S.A.</u> 2C:43-6.2 provides that the prosecutor may make a motion before the assignment judge for a finding that the imposition of the mandatory minimum term under <u>N.J.S.A.</u> 2C:43-6(c) does not serve the interest of justice, whereupon "the assignment

judge shall place the defendant on probation pursuant to" N.J.S.A. 2C:43-2b(2), or alternatively reduce [the] mandatory minimum term of parole ineligibility to one year. The statute continues:

> The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.
>
> [State v. Ginty, 243 N.J. Super. 39, 41 (App. Div. 1990).]

In circumstances where the State has not sought the exception,

> the defendant may not just challenge the prosecutor's decision in a conclusory manner; he must make a showing of arbitrariness constituting an unconstitutional discrimination or denial of equal protection constituting a "manifest injustice," and should be required to do so by moving papers designed to convince the Assignment Judge that any kind of hearing on the issue is warranted. Cf. R. 3:21-10(c). A hearing would be conducted only if the Assignment Judge "after review of the materials submitted with the motion papers, concludes that a hearing is required in the interests of justice."
>
> [Alvarez, supra, 246 N.J. Super. at 148-49 (citations omitted).]

Defendant asserts the PCR judge erroneously declared him ineligible for the escape valve relief because the judge mistakenly concluded N.J.S.A. 2C:39-4.1 was not an offense which qualified

for the exception. The judge may have been mistaken in this regard, but we conclude defendant was not eligible for the escape valve because the State neither sought the exception nor did defendant's circumstances support the judge making the referral to the Assignment Judge.

Indeed, the PCR judge recounted the State's position on the exception, noting "[t]he State contends that its refusal would not be arbitrary because the Defendant's record boasts over two dozen juvenile adjudications, adult arrests, and indictable convictions and because authorities found numerous weapons as well as a home surveillance system at the scene of the instant crime." The PCR judge then noted defendant "failed to present the required prima facie elements for arbitrariness or equal protection of rights."

We see no reason to disagree with the PCR judge's findings in this regard. Given the list of prior adjudications and convictions as well as the facts underlying defendant's instant conviction, namely, the existence of weapons and the surveillance set up on his residence, we fail to see the arbitrary nature of the State or the PCR judge's refusal to seek the escape valve.

Defendant also asserts an ineffective assistance of counsel based on the alleged failure of trial counsel to seek mitigating factor twelve, the failure to appeal the convictions and the

sentence, and PCR counsel's failure to raise the issue of plea counsel's failure to appeal.

Defendant's claim his counsel was ineffective for failing to seek mitigating factor twelve is unavailing.[1] N.J.S.A. 2C:44-1(b)(12) provides a court may consider "[t]he willingness of the defendant to cooperate with law enforcement authorities" as a mitigating factor in sentencing. As noted above, the sentencing judge found three aggravating and no mitigating factors. The same judge adjudicating defendant's PCR petition explained if trial counsel had asked for mitigating factor twelve, the judge would have given it "slight weight" because she still "would have found that the aggravating factors substantially outweighed the mitigating factors." Therefore, we reject defendant's claim that his attorney was ineffective because he failed to seek a finding of mitigating factor twelve.

Lastly, we reject defendant's contention that he was denied the effective assistance of counsel because his attorney failed to pursue a direct appeal of the convictions or the sentence. Defendant did not submit an affidavit or certification stating he directed counsel to file an appeal. R. 3:22-8. Moreover,

---

[1] The PCR court's decision notes defendant's ineffective assistance of counsel claim initially alleged the failure to seek application of mitigating factors one and twelve. However, on appeal he has only raised an issue with the application of factor twelve.

defendant has not shown that he would have prevailed on a direct appeal, if it had been filed.

## II.

Defendant also argues the PCR court abused its discretion by denying him an evidentiary hearing to address his ineffective assistance of counsel claims. We disagree.

A PCR court need not grant an evidentiary hearing unless "a defendant has presented a prima facie [case] in support of post-conviction relief." State v. Marshall, 148 N.J. 89, 158 (alteration in original) (citation omitted), cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Ibid. The court must view the facts "in the light most favorable to defendant." Ibid. (citation omitted); accord R. 3:22-10(b). Because defendant failed to establish a reasonable likelihood of success on his claims of ineffective assistance of counsel, an evidentiary hearing was not required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2855-15T2