# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2159-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STEVEN ALICEA, a/k/a
STEVEN J. ALICEA, ALLICA
STEVEN, LIL STEVEN, and
LIL SHINE,

     Defendant-Appellant.

_____

Submitted May 11, 2022 – Decided June 24, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-02-0375.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin Jay Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the November 12, 2020 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Following a 2016 trial, a jury convicted defendant of fifteen crimes stemming from two incidents that occurred on the same day in 2011 – the first involving a robbery and murder, and the second involving a home invasion, robberies, and aggravated sexual assaults. The convictions included first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(4); three counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2(a)(1); first-degree use of a juvenile to commit a criminal offense, N.J.S.A. 2C:24-9; two counts of first-degree witness tampering, N.J.S.A. 2C:28-5(a); and various weapons offenses. Defendant was sentenced to an aggregate term of life without parole, plus sixty-six years of imprisonment with forty-one years of parole ineligibility.

2

Defendant appealed his convictions and we affirmed in an unpublished opinion. See State v. Alicea, No. A-1363-16 (App. Div. Oct. 19, 2018). The Supreme Court subsequently denied certification. State v. Alicea, 237 N.J. 564 (2019). In our unpublished opinion, we detailed the substantial evidence underlying defendant's convictions as follows:

> The two incidents that gave rise to defendant's convictions occurred on September 30, 2011. There were three victims: L.B. was robbed and murdered; G.T. was robbed; and B.C. was robbed and sexually assaulted. At trial, G.T., B.C., and other witnesses testified. On September 30, 2011, C.B., a friend of L.B., had made arrangements to meet her at his home. Anticipating her arrival, C.B. was looking out a window on the second floor of his home. During the evening, he saw a white van pull up, with L.B. riding in the van. C.B. then saw three Hispanic men in hooded sweatshirts approach the van. He noted that one of the men's sweatshirts had a cartoon character's face on the front. One of the men went to the driver's side of the van and the other two men went to the passenger side.
>
> L.B. exited the van and made her way towards C.B.'s door. C.B. then went downstairs to let L.B. into his home. Before he opened the door, he heard L.B. say: "I don't have anything," and "leave me alone[.]" C.B. then heard gunshots. C.B. went back upstairs, looked out the window, and saw L.B. on his front steps. He heard L.B. tell a woman, whom he knew as "Cookie," "they shot me." Cookie called 911.
>
> L.B. was taken to the hospital and ultimately died from her injuries, which included a gunshot wound and head trauma. Before she died, however, a sergeant who

3

had responded to the report of the shooting spoke with L.B. The sergeant testified that L.B. told him that three males shot her.

That same night, G.T. was at his home, which was located approximately two blocks from where L.B. was shot. G.T. was over eighty years old at the time, and B.C., his caretaker and friend, was living with him.

Just after 11 p.m., G.T. and B.C. heard bangs on their door. G.T. opened the door and three men entered the home, one of whom was pointing a gun at G.T., while a second held another gun. The men demanded money from G.T. The men then told B.C. to take her clothes off and forced her to perform oral sex on G.T. Thereafter, B.C. was forced to perform oral sex on the three men and each of the men raped her vaginally and anally. When B.C. tried to resist the assaults, she was punched and hit with a gun.

While at the home, the men searched for and took various items, including watches, keys, a phone, coins, and a chain. The men also threatened G.T. and B.C. throughout the time that they were at the home. Eventually, the men left the home. G.T. then called the police.

The police arrived shortly thereafter and began to search the area for the suspects. Police officers saw several men, one of whom was wearing a red sweatshirt, which matched G.T.'s description of one of the suspects. When the police stopped to question the men, they ran away. The officers pursued and eventually apprehended defendant and [co-defendant

4

John] Gonzalez.[1] A third suspect escaped and apparently has not been located.

While pursuing defendant, an officer saw defendant discard a handgun, which was later recovered. Officers pursuing Gonzalez observed Gonzalez discard a blue sweatshirt. When police officers later recovered the sweatshirt they found a handgun wrapped in it. Gonzalez was searched incident to his arrest, and the police found two watches and a chain belonging to B.C. and G.T. After being arrested, Gonzalez was taken to G.T.'s home and G.T. identified Gonzalez as one of the men involved in the robbery and sexual assaults. Thereafter, the police also recovered a purse found on the front porch of G.T.'s home. L.B.'s DNA was found on cosmetics inside the purse.

In the meantime, B.C. was taken to the hospital and evaluated by a sexual assault nurse examiner (SANE nurse). During the examination, B.C. described the sequence of events leading up to the sexual assaults and what the suspects looked like. After her examination, B.C. was taken to the police station where she identified defendant in a photo array.

. . . .

At trial, a series of confiscated letters were introduced that implicated defendant in the murder. One of the letters was confiscated from defendant's younger brother while the brother was in jail. Another of the letters was intercepted when it was sent to Gonzalez in jail. The State presented evidence that the

---

[1] Gonzalez was indicted and charged in connection with the two incidents. He was tried separately and convicted of numerous offenses. Following his convictions, he filed a separate appeal, which resulted in his convictions being affirmed. See State v. Gonzalez, No. A-0066-16 (App. Div. Oct. 19, 2018).

A-2159-20

letters had been sent by defendant. The letters contained admissions and indicated that defendant would take revenge if Gonzalez gave a statement against him.

[Alicea, slip op. at 2-6.]

Defendant filed a timely pro se petition for PCR alleging that his trial counsel was ineffective for failing to: (1) call defendant's brother as a defense witness; (2) file a "404(B) motion" as well as a motion to suppress and for a Wade[2] hearing; (3) provide defendant with full discovery prior to trial; (4) cross-examine B.C. "on her prior criminal history"; (5) "point[] out that [defendant's] DNA was not found on [B.C.'s] body"; (6) "hav[e] an expert witness testify" that "the note/letter that was found in [the] county jail cell" was not written by defendant; (7) "call a gang expert to determine if th[e] note/letter was gang related"; and (8) object to "the county jail officer['s]" testimony that defendant "was incarcerated at the time of his trial" and "request[] a curative instruction."

Defendant was assigned PCR counsel who filed a supplemental petition and brief in which he added that trial counsel was ineffective for "not objecting to the hearsay testimony of [the SANE nurse]" regarding B.C.'s complaints. In support, counsel asserted that the nurse's testimony "did not fall within a hearsay

---

[2] United States v. Wade, 388 U.S. 218 (1967).

exception," and because the nurse "testified before [B.C.]," it "impermissibly bolster[ed B.C.]'s testimony" and undermined her cross-examination.  Relying on State v. Webster, 187 N.J. 254 (2006), PCR counsel also urged "the [c]ourt . . . [to] consider any and all issues raised [in defendant's pro se petition] which were not specifically augmented either through [counsel's] written supplement or at the oral argument . . . and grant the relief requested in th[e] PCR [petition]."

Following oral argument, the PCR judge denied PCR and held that "defendant [was] not entitled to an evidentiary hearing with respect to his claims."  In an oral decision, the judge detailed the facts and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie case of ineffective assistance of counsel (IAC) by a preponderance of the evidence.  Viewing the facts in the light most favorable to defendant, the judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test.

Addressing the claim raised by PCR counsel, the judge rejected the contention that trial counsel's failure to object to the SANE nurse's "hearsay testimony" amounted to IAC. The judge explained that because statements made for the purpose of medical diagnosis or treatment are exceptions to the hearsay rule, see N.J.R.E. 803(c)(4), "there was no valid basis for counsel to object . . . and counsel's failure to object was not unreasonable under the circumstances."

The judge stated:

> A review of [the nurse's] testimony makes evident that it falls within the medical diagnosis and treatment exception to the hearsay rule. The events as described to her by B.C. were critical to her treatment. B.C. was attacked by three separate men and forced to, under threat, . . . perform a sexual act on a fourth person. The details provided by B.C. instructed [the nurse] where to examine B.C., and what evidence of the assault to look for, specifically to conduct swabs of B.C.'s vaginal and rectal cavity.
>
> The detail gave context to symptoms B.C. was experiencing such as pain. [The nurse] explained that [B.C.] appeared to be in a great deal of pain, was wincing, having trouble sitting, and complained that her mouth was sore.
>
> The details relating to defendant's possession of the gun were also relayed for the purpose of treatment. During the assault B.C. was struck in the face with the gun. She exhibited swelling and bruising on her left eye requiring treatment.
>
> . . . .

8

> Lastly, there was nothing in [the nurse's] testimony regarding the description of the three assailants that [was] so objectionable it could [be] said to have prejudiced defendant. The description of the perpetrators as Spanish, tall, or having a goatee, is distinguishable from an identification where one clearly names the defendant as the actor, or places the particular defendant at the scene of the crime.

Specifically addressing the prejudice prong, the judge concluded, "the evidence presented at trial was so overwhelming, an objection [to the nurse's hearsay testimony] or [a] curative instruction would have had little impact."

Regarding defendant's claim that defense counsel was ineffective for failing to object to the order in which the witnesses testified, the judge acknowledged that the nurse testified before B.C. but pointed out that "there [was] nothing in [the] law that dictate[d] the order o[f] witnesses to be presented." Rather, according to the judge, the decision was "at the discretion of counsel and the [c]ourt," see N.J.R.E. 611, and was often dictated "by witness availability and time constraint[s]." Nevertheless, the judge noted there was no prejudice because "counsel had [a] full opportunity to cross-examine both [the nurse] and B.C., and the trial records indicate[d] that defense counsel thoroughly cross-examined both witnesses."

A-2159-20

The judge also painstakingly addressed each of defendant's pro se claims, including defendant's claims that trial counsel was ineffective for failing to call witnesses, in particular, his brother and an expert to testify about "the [letters] found in the county jail" to prove that "defendant did not write the letter[s], and that the letter[s were] not gang related." The judge rejected the claims as "unsupported" "bald assertions." See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

The judge explained "[d]efendant provide[d] no certification from his brother stating that he would have testified . . . or the contents of his testimony. Moreover, defendant fail[ed] to iterate one reason that the absence of his brother's testimony prejudiced him at trial, and none [could] be logically inferred." Likewise, defendant did not provide "a certification, or even a statement from a handwriting expert, indicating that an analysis or comparison of the handwriting was performed, and that . . . defendant [was] not the author of the letters found." Similarly, defendant did not provide "a certification from a gang expert reaching the conclusion that the language was not gang related." See ibid. (explaining a petitioner must support his claim of "counsel's alleged

10

substandard performance" with "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification").

Next, the judge addressed defendant's claim that trial counsel was ineffective for failing to file certain motions. First, the judge dismissed defendant's claim regarding trial counsel's failure to request a hearing to determine the admissibility of N.J.R.E. 404(b) evidence because "defendant fail[ed] to identify or state with any specificity what evidence" should have been excluded or how such a hearing "would have changed the outcome of the trial." See State v. Porter, 216 N.J. 343, 355 (2013) ("[A] defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing.'" (quoting State v. Marshall, 148 N.J. 89, 158 (1997))).

Further, the PCR judge explained that when trial counsel moved for severance of the counts pertaining to the two incidents – the incident involving the murder and the incident involving the home invasion – in denying the motion, the trial judge addressed N.J.R.E. 404(b) and effectively conducted an analysis under State v. Cofield, 127 N.J. 328 (1992). On direct appeal, defendant had challenged the trial judge's ruling on the severance motion, but we had rejected defendant's challenge and affirmed the ruling. See Alicea, slip

11

op. at 9-14. Thus, the PCR judge concluded defendant's claim was barred under Rule 3:22-5 "as the substance of the claim[] was expressly adjudicated" on "the merits" both in the trial court and on appeal. See State v. Preciose, 129 N.J. 451, 476 (1992) ("[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for [PCR]." (citing R. 3:22-5)).

Turning to defendant's claim that trial counsel was ineffective for failing to file a motion for a Wade hearing and to suppress evidence, the judge noted, "defendant simply assert[ed] that the motion . . . 'would have established that the evidence was obtained illegally, and that the motion to suppress would have shown that the photo lineup that was put to identify the defendant was not in accordance with the procedures of the court.'" However, according to the judge, defendant failed to "identify or even allude to what evidence should have been suppressed, or the improper manner in which the evidence was procured." Nonetheless, after conducting an in-depth analysis of the viability of either motion, the judge found no evidence that "the identification was unduly suggestive" and concluded defendant failed to demonstrate that such a motion "would have been successful." The judge stressed that "failure to raise unsuccessful legal arguments does not constitute [IAC]." See State v. Worlock,

12

117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel.").

Additionally, according to the judge, "[g]iven the totality of the evidence . . . presented at trial, . . . defendant [wa]s unable to meet the prejudice standard on this basis." The judge recounted:

> G.T. and B.C. identified defendant in open court as the perpetrator. The surveillance video show[ed] defendant in clothing matching the description provided by G.T., B.C. and . . . [C.B.]. All three witnesses gave consistent descriptions of the assailant[s] that match[ed] the clothing they were wearing when they were apprehended. L.B.'s purse was discovered on the porch of B.C. and G.T.'s home, and the proceeds of the robbery [were] recovered off of co-defendant Gonzalez' person.

Next, the judge dismissed defendant's claim that he was not provided complete discovery as "vague." The judge explained defendant "fail[ed] to identify what discovery was deficient, when he requested the discovery, or why he could not raise th[e] issue in an earlier proceeding." Additionally, the judge described "defendant's claims regarding counsel's failure to cross-examine B.C. on her alleged criminal history" as "unsubstantiated," and characterized defendant's "claim that B.C. may have received favorable treatment . . . on a pending matter in exchange for her testimony" as "unsupported" and "speculative." Contrary to defendant's claim, the judge determined trial counsel

13

effectively cross-examined B.C. "concerning her prior heroin purchases from co-defendant Gonzalez," as well as the discrepancy in her earlier statement given "in October 2011 when she confused defendant with co-defendant Gonzalez."

The judge also rejected defendant's contention that trial counsel was ineffective for "failing to point out that [defendant's] DNA was not found on the victim or at the scene of the crime."  As the judge stressed, "the record[] unequivocally demonstrate[d] that the jury was [made] aware that defendant's DNA was not found on the samples taken from B.C.," and trial counsel emphasized during cross-examination of the State's forensic witness and summations that "the lack of DNA demonstrated that defendant did not commit the offense[s] for which he was charged."

Finally, the judge addressed defendant's contention that trial counsel was ineffective for not objecting to the testimony of the county jail officer, Officer Mangaro, who, while testifying about the letters found in the county jail, "advised the jury that defendant was incarcerated at the time of his trial."  The judge explained:

> Officer Mangaro testified that he found defendant's handwritten [letter] in the jail . . . containing admissions that defendant committed the murder of L.B. and assault of B.C.  He further testified

14

that the letter, signed by Little Steven, or L.S., was used to identify defendant because he was the only Steven housed in [the] unit where the letter was sent.

His testimony concerning defendant's incarceration was limited to discovery of the letter and not offered to prove defendant's guilt. Moreover, his testimony in this regard was necessary to give context to how the letter was discovered, and to lay foundation for the admission of the letter into evidence.

Defendant has not raised any grounds upon which counsel could have objected to the testimony, or that the trial judge would have sustained the objection . . . . Counsel's failure to object is also inconsequential in light of the overwhelming evidence of guilt that was introduced at . . . trial.

II.

In this ensuing appeal, defendant raises the following points for our consideration:

POINT ONE

A. THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL EXPLAINING WHY HE FAILED TO OBJECT TO THE HEARSAY TESTIMONY OF [THE SANE NURSE] AS BEYOND THE SCOPE OF MEDICAL TREATMENT.

B. THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL

15

EXPLAINING WHY HE FAILED TO OBJECT TO THE TESTIMONY OF [THE SANE NURSE], WHICH BOLSTERED THE CREDIBILITY OF THE VICTIM.

POINT TWO

THIS MATTER MUST BE REMANDED FOR THE APPOINTMENT OF NEW PCR COUNSEL AS SUPPORT WAS NOT PROVIDED FOR ANY OF THE PRO SE ARGUMENTS RAISED BY [DEFENDANT] IN HIS PCR PETITION, LEAVING THE PCR COURT UNABLE TO PROPERLY ADDRESS ANY OF THOSE ISSUES. (NOT RAISED BELOW).

"We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing only if: (1) the defendant establishes a prima facie PCR claim; (2) "there are material issues of disputed fact that cannot be resolved by reference to the existing record"; and (3) "an evidentiary hearing is necessary to resolve the claims for relief." Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted."

16

<u>Brewster</u>, 429 N.J. Super. at 401 (second alteration in original) (quoting <u>Marshall</u>, 148 N.J. at 158).

"To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." <u>R.</u> 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." <u>State v. Goodwin</u>, 173 N.J. 583, 593 (2002). Critically, to establish a prima facie IAC claim, a defendant must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 700; <u>Fritz</u>, 105 N.J. at 58.

When reviewing IAC claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption" that counsel's performance was reasonable. <u>Strickland</u>, 466 U.S. at 689. Thus, establishing deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-88.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

17

<u>Id.</u> at 687. Moreover, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

A defendant must establish both prongs of the <u>Strickland</u>/<u>Fritz</u> test to obtain a reversal of the challenged conviction. <u>Strickland</u>, 466 U.S. at 689, 697; <u>Fritz</u>, 105 N.J. at 58. Although a failure to satisfy either prong results in the denial of a PCR petition based on IAC, <u>State v. Parker</u>, 212 N.J. 269, 280 (2012), "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed," <u>Strickland</u>, 466 U.S. at 697. <u>See also</u> <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012) ("Although a demonstration of prejudice constitutes the second part of the <u>Strickland</u> analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." (citations omitted) (citing <u>Strickland</u>, 466 U.S. at 697)).

Here, we are satisfied from our review of the record and governing legal principles that defendant failed to establish a prima facie IAC claim to warrant PCR or an evidentiary hearing and affirm substantially for the reasons stated in the PCR judge's comprehensive oral opinion. Critically, as the judge repeatedly

pointed out, given the overwhelming evidence of guilt, defendant's failure to demonstrate that he was prejudiced by any purported deficient performance by trial counsel was fatal to his petition.

Defendant also argues that he must be assigned a new attorney "to start the [PCR] process anew because his pro se petition arguments [were] 'wholly unexplored'" by virtue of PCR counsel's failure "to address any of [defendant's] pro se arguments with any supporting information in his brief." In support, defendant relies on the following colloquy between the judge and PCR counsel during oral argument:

> [COURT]: All right Counsel, I have read the submissions, as well as all of the supporting documents that were filed in this matter. Are there any particular arguments that anyone wishes to address on the record?
>
> [PCR COUNSEL]: Your Honor, not from me unless Your Honor has any questions. I believe that issue is fully addressed in the amended petition that I filed, and I would seek to incorporate also any pro se arguments the [defendant] submits as well.
>
> . . . .
>
> [COURT]: . . . There's a few questions that I have. I'll start with [defense counsel].
>
> One of the issues that's raised is regarding the testimony of Officer Mangaro at trial that related to the letter that was found in the jail. And there is an argument raised that there should have been an

19

objection at trial based on the testimony that he provided that the letter was found in the jail, that indicated that defendant was incarcerated during the time of the trial. . . . [W]hat precluded raising this issue on appeal?

[PCR COUNSEL]: Your Honor, I did not raise that issue in the amended petition that I filed. It's a pro se issue that I did not incorporate into the amended petition. I really don't think it's appropriate for me to analyze it, because it's a pro se issue, and I don't wish to undermine [defendant's] own argumentes.

It is addressed in the prejudice prong of the amended petition that I submitted on behalf of [defendant] . . . in that there was no real corroboration where this letter came from, and in fact how the route to the co-defendant . . . Gonzalez would have been achieved by [defendant], assuming that the letter was, in fact, [defendant's].

Your Honor, with regard to the issue of confinement prior to trial, I think it would . . . have been impossible to sanitize the communication without mentioning, in fact, that both of the defendants were in prison.

We recognize that Rule 3:22-6

state[s] that every defendant is entitled to be represented by counsel on a first PCR petition; that if a defendant is indigent, counsel will be assigned; that assigned counsel may not withdraw based on the ground of "lack of merit" of the petition; and that "counsel should advance any grounds insisted on by defendant notwithstanding that counsel deems them without merit."

20

[State v. Rue, 175 N.J. 1, 13 (2002) (quoting R. 3:22-6).]

Although "PCR counsel must communicate with the client, investigate the claims urged by the client, . . . determine whether there are additional claims that should be brought forward" and "[t]hereafter, . . . advance all of the legitimate arguments that the record will support," PCR counsel is not required to bolster claims raised by a defendant that are without foundation. Webster, 187 N.J. at 257. Instead,

> [i]f after investigation counsel can formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point. Stated differently, the brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them. That procedure, which will serve to preserve defendant's contentions for federal exhaustion purposes, is all that is required.
>
> [Ibid.]

When PCR counsel fails to meet these standards, the appropriate remedy is a remand for a new PCR hearing. State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010) (citing Rue, 175 N.J. at 4). "This relief is not predicated upon a finding of [IAC] under the relevant constitutional standard. Rule 3:22-6(d)

imposes an independent standard of professional conduct upon an attorney representing a defendant in a PCR proceeding." Ibid. (citations omitted).

In Rue, the defendant's PCR counsel submitted a brief advancing "no argument at all on behalf of Rue." 175 N.J. at 8. Instead, the brief only addressed the inadequacies of Rue's pro se PCR claims and sought "clarification of the law in the situation in which PCR counsel believes the client's claims are legally meritless, but the client refuses to withdraw the PCR." Ibid. At oral argument, PCR counsel again pointed out the deficiencies in Rue's PCR claims. Id. at 10-11. Our Supreme Court reversed the trial court's denial of Rue's PCR petition and remanded for a new PCR hearing with different counsel based on PCR counsel's failure to fulfill his obligations under Rule 3:22-6(d). Id. at 19. The Court reasoned, "[b]ecause Rue's counsel abandoned any notion of partisan representation by countering every one of his claims and characterizing the entire petition as meritless, Rue did not receive the representation guaranteed by our PCR Rule," and "Rue's PCR contentions [had] remain[ed] . . . wholly unexplored." Ibid.

Similarly,

> [i]n Webster, the defendant's PCR counsel submitted a brief on his behalf which examined only one of the nine claims presented by Webster in his PCR petition. On appeal, Webster claimed that his counsel's failure to

22

brief and present all nine contentions violated <u>Rule</u> 3:22-6(d) and warranted a reversal. The Court agreed. By not presenting all of Webster's PCR petition claims, his PCR counsel failed to meet the standard outlined in the <u>Rule</u>, which required the matter to be remanded for a new PCR hearing.

[<u>Hicks</u>, 411 N.J. Super. at 377 (citations omitted) (citing <u>Webster</u>, 187 N.J. at 256, 258).]

Guided by these principles, we are satisfied PCR counsel's performance complied with the dictates of <u>Rule</u> 3:22-6(d), as construed by our Supreme Court in <u>Rue</u> and <u>Webster</u>. Accordingly, we reject defendant's arguments to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23