**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1059-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YUSUF IBRAHIM a/k/a YUSUT
IBRAHIM, YUSEF F. IBRAHIM,
YUSIF IBRAHIM, YUSLIF
IBRAHIM, YUSUF IBRAHAM,
and YUSUF MESHAL,

    Defendant-Appellant.

_____

Submitted December 17, 2024 – Decided May 16, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 14-03-0022 and 14-04-0044.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Laura E. Wojcik, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Yusuf Ibrahim appeals from two July 27, 2022 orders denying his petitions for post-conviction relief (PCR) on separate indictments. We affirm.

I.

Indictment No. 14-03-0022 charged defendant with first-degree robbery, N.J.S.A. 2C:15-1 (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) (count four); and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five).

On October 8, 2014, defendant entered a guilty plea to all counts. Subsequently, defendant was sentenced to twelve years imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the robbery count, with concurrent sentences on the remaining counts.

Indictment No. 14-04-0044 charged defendant with two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (a)(2) (counts one and two); two counts of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (counts three and four); two counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts five and six); two counts of first-degree kidnapping, N.J.S.A. 2C:13-1(b) (counts seven and eight); two counts of second-degree desecrating human remains, N.J.S.A. 2C:22-1(a) (counts nine and ten); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eleven); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count twelve); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count thirteen); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count fourteen); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b) (count fifteen); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count sixteen).

We glean the pertinent facts from our unpublished opinion, State v. Ibrahim, No. A-1204-16, (App. Div. Aug. 22, 2019) (Ibrahim I):

> Ligdalis Gonzalez, a former friend of defendant, testified that on February 4, 2013, she got into a car defendant was driving in order to ride around and "smoke." In the car were two men Gonzalez did not know. At one point, without any provocation, defendant hit one of the men with a dark object, and

both men appeared "scared." Because of defendant's actions, Gonzalez got out of the car.

One of defendant's uncles, Thomas, testified that on February 5, 2013, defendant telephoned him and asked that he meet defendant at Thomas's mother's house. Thomas obliged but nothing of significance occurred that day, although defendant mentioned he used a friend's car to drive to the house. The following day, however, defendant told Thomas he killed two men because they had threatened him and the family. Defendant also told Thomas he put the bodies in his friend's car, drove to the house, dismembered the bodies, and buried their remains in the woods behind the house.

"Horrified" by defendant's revelation, Thomas told defendant to leave. Thomas left but minutes later returned to the house and found defendant still in it. Thomas told defendant to remove the bodies from the property. Defendant said he would do so, but needed to "to dump the car first." Defendant then drove away in a white Mercedes. On February 8, 2013, the police found a burned-out Mercedes automobile in Philadelphia. It is not disputed [that] the vehicle was owned by one of the victims and that both victims were shot in that car.

On February 7, 2013, Thomas went to a local State Police barracks and reported what defendant revealed to him. Detectives David Gosweiler and Glenn Garrels and other State troopers immediately responded to Thomas's mother's property with a dog trained in detecting cadavers. One of the police officers testified the dog scratched the ground in one particular spot in the woods. The detectives noted that on that spot there was "freshly disturbed earth" covered with "several sticks." The ground was opened, revealing two

4

bodies without heads or hands. The dog led the police to another area where the ground . . . also appeared to have been recently disturbed; in that spot the officers unearthed the missing body parts.

Two saws and a shovel were also found hidden nearby. The bodies of the victims were identified, and bloodstains found on the tools were consistent with their DNA profiles. The medical examiner testified the victims' bodies had been subject to gunshot wounds to the left sides of their chests at close range, and that their heads and hands were removed with a "serrated or sawtooth type of weapon."

On February 10, 2013, defendant was arrested and subsequently gave a recorded statement to the detectives, which was played in the presence of the jury. In that statement defendant stated he and the two victims use[d] to "hang out" or "ride around" smoking marijuana. On February 4, 2013, defendant and the victims were riding in a white Mercedes, which belonged to one of the victims, when one of the victims pulled out a gun and the victims threatened to harm defendant's family members if he did not "work with them." The victims continued to make threats as the three continued to ride around in the car.

At one point, defendant managed to grab the gun from the victim and then shot and killed both victims. He went to Thomas's mother's home to bury both bodies, using tools he found in the garage to dig a grave. He cut off the victims' heads and hands with a "little hacksaw and scissors," and buried the bodies in one hole and the heads and hands in another. Because he did not have a key to the house, he called Thomas, who eventually arrived and gave defendant access. Defendant then showered and put his and the victims' clothes in the trunk of the Mercedes.

5

The following morning, Thomas began to suspect something serious had happened and "started to panic." Defendant told his uncle what he had done. Defendant then left in the Mercedes, drove to Philadelphia and, with the help of his brother, set the Mercedes on fire.

Defendant testified at trial. He claimed he and the victims were driving around and smoking marijuana the evening of February 4, 2013, when one of the victims forced defendant to get into the trunk. The victims drove to another location, where defendant heard them beat and rape a woman by the name of Fiona, who they subsequently put in the trunk with him.

After many hours, defendant was let out of the trunk and forced to drive the car. While one of the victims pointed a gun at him, defendant managed to wrestle the gun from the victim and then shot and killed both victims. Defendant maintained he shot the victims in self-defense. Defendant let Fiona out of the trunk, and they drove to Thomas's mother's house, where Fiona dismembered and defendant buried the victims' bodies. Defendant testified that after his uncle arrived, he told him that he had killed two people in self-defense and buried them in the yard. His uncle "disregarded" defendant's claim he had acted in self-defense and became very nervous. Defendant left the house, drove Fiona to Atlantic City, and then drove to Philadelphia where he and his brother burned the Mercedes.

Prior to trial, defendant moved to suppress statements he made to police during his interrogation on February 10, 2013. After a six-day suppression hearing, the court denied defendant's motion on December 8, 2015.

A-1059-22

Following a jury trial, defendant was found guilty of two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1); two counts of second-degree desecrating human remains, N.J.S.A. 2C:22-1(a); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); two counts of third-degree theft from a person, N.J.S.A. 2C:20-2(b)(2)(d); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1).

The court sentenced defendant to two consecutive life sentences on the murder convictions, subject to NERA. The remaining charges were sentenced concurrently. Defendant appealed his conviction and sentence. On direct appeal, defense counsel raised several issues: (1) defendant's statement to police was obtained in violation of his Fifth Amendment and Sixth Amendment rights, and should have been suppressed; (2) the trial court erred by denying a mistrial when a police officer testified that defendant had previously shot W.A.; (3) defendant was prejudiced by rebuttal evidence that he had previously owned a gun; (4) the prosecutor made inappropriate remarks during summation; (5)

cumulative error required reversal of the convictions; and (6) defendant received an excessive sentence.

In his pro se brief, defendant argued: (1) the trial court erred by failing to instruct the jury as to a prior inconsistent statement; and (2) defendant received ineffective assistance of counsel (IAC). On August 22, 2019, we affirmed in Ibrahim I, noting that defendant's IAC claims could not be addressed on direct appeal.

Defendant filed PCR petitions challenging both convictions. Among other things, defendant argued that: (1) enhanced audio recordings of conversations between himself and officers in his jail cell constituted newly discovered evidence sufficient to vacate his convictions; (2) he was denied effective assistance of counsel when his trial attorney failed to conduct an appropriate investigation; (3) he was denied effective assistance of counsel when his trial attorney called an investigator to testify that he could not locate a witness named Fiona; and (4) he was entitled to an evidentiary hearing.

The PCR judge granted an evidentiary hearing specifically on defendant's claims regarding the enhanced recording of his police statement and his allegations of IAC. Plea counsel, trial counsel, defendant, some of defendant's family members, experts, and others testified over two non-consecutive days,

after which the PCR court denied all of defendant's claims, issuing comprehensive statements of reasons supporting each order.

PCR court found the enhanced recording did not support defendant's version of events. The court determined that, contrary to defendant's allegations, the newly clarified conversations were between detectives discussing the case among themselves rather than interactions with defendant. The court concluded this evidence would not have changed the outcome of the trial.

Turning to defendant's IAC claims against plea counsel, the PCR court found counsel's testimony credible and that he provided all available discovery to defendant and made reasonable efforts to contact witnesses. The court determined defendant was not prejudiced by counsel's performance. As for defendant's IAC claims against trial counsel, the court found that counsel made reasonable strategic decisions in his investigation and presentation of the case.

Defendant appeals, raising the following points:

> I. DEFENDANT ESTABLISHED HIS ENTITLEMENT TO POST-CONVICTION RELIEF DUE TO THE VIOLATION OF HIS FIFTH AMENDMENT RIGHTS DURING HIS INTERROGATION AND DUE TO INEFFECTIVE ASSISTANCE OF HIS PLEA AND TRIAL COUNSELS.
>
> A. DEFENDANT ESTABLISHED HIS ENTITLEMENT TO [PCR] DUE TO THE

A-1059-22

VIOLATION OF HIS FIFTH AMENDMENT RIGHTS DURING HIS INTERROGATION.

B. DEFENDANT ESTABLISHED HIS ENTITLEMENT TO [PCR]RELIEF DUE TO THE [IAC].

C. DEFENDANT ESTABLISHED HIS ENTITLEMENT TO [PCR] DUE TO THE [IAC].

II. DEFENDANT IS ENTITLED TO [PCR]DUE TO THE CUMULATIVE EFFECTS OF THE ERRORS MADE BY PLEA AND TRIAL COUNSELS

In a supplemental brief, defendant also raises the following arguments:

I. PCR COUNSEL FAILED TO PROPERLY COMMUNICATE WITH [THE] DEFENSE EXPERT, DEPRIVING [DEFENDANT] OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT.

II. [PCR] COUNSEL[] [WAS] INEFFECTIVE BY FAILING TO BRIEF, ADVANCE, OR INVESTIGATE ANY OF THE MERITORIOUS ISSUES RAISED BY THE APPELLANT VIOLATING THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND RULE 3:22-6(D); STATE V. PORTER, 216 N.J. 343, 352 (2013); STATE V. NASH, 212 N.J. 518, 542 (2013); STATE V. RUE, 175 N.J. 1 (2002); STATE V. WEBSTER, 187 N.J. 254 (2006); STATE V. SAVAGE, 120 N.J. 594 (1990).

II.

An appellate court's review of a trial court's denial of PCR following an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). After an evidentiary hearing, we should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting Nash, 12 N.J. at 540). However, any legal conclusions are reviewed de novo. Nash, 212 N.J. at 540-41.

III.

A.

Defendant first argues that the PCR court erred in finding that his Fifth Amendment rights were not violated during his police interrogation and that the enhanced audio recording of the interrogation was not newly discovered evidence warranting a new trial. We are not persuaded.

For a defendant to secure a new trial based on newly discovered evidence a three-prong test must be satisfied. State v. Ways, 180 N.J. 171, 187 (2004). Defendant must show that the evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial

and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Szemple, 247 N.J. 82, 99 (2021) (quoting Nash, 212 N.J. at 549). All three prongs must be satisfied. Ways, 180 N.J. at 187.

Our Supreme Court has recognized that "prongs one and three are inextricably intertwined." Nash, 212 N.J. at 549. "Evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory." Ibid. (quoting Ways, 180 N.J. at 189). "The power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence." Id. at 549-50.

Here, the PCR court found the enhanced audio recording of the thirty-four-minute period between defendant's interrogations revealed no new information. The court found the recording actually corroborated the officers' testimony. The PCR court noted that the recorded conversations consisted of detectives discussing defendant's case among themselves. This finding was supported by testimony from both Det. Hannigan and Sgt. Garrels. Det. Hannigan testified that he spoke about defendant but did not speak to him during the conversation with the other detectives. Sgt. Garrels testified that defendant

initiated a conversation with him, asking what would happen to him and his brother, and that he never questioned the defendant about the investigation while in the holding cell.

The PCR court found that defendant was not pressured into giving a statement, did not appear threatened, and was in control of the conversation. Defendant only discussed what he wanted to, choosing to implicate some and not others.

Because the enhanced recording did not reveal anything new nor corroborate defendant's testimony, the PCR court found the recording failed to satisfy the test for newly discovered evidence and would not be likely to change the jury's verdict. We agree, and cannot conclude, based on this record, that it would be likely to change the jury's verdict. The recording revealed conversation among officers discussing defendant's case, consistent with the officers' testimonies at the suppression hearing. Additionally, defendant proffered no new information that would have altered the court's finding that defendant was not pressured to give a statement.

It follows that we affirm the PCR court's determination that the enhanced recording was not newly discovered evidence that would warrant a new trial.

A-1059-22

B.

Defendant argues that his pre-trial counsel and trial counsel were ineffective.

When addressing an IAC claim, we follow the two-prong standard formulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

To prove IAC, the defendant must prove two things. "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538 (2021) (quoting Strickland, 466 U.S. at 687). Under this prong, the analysis is whether "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "Second, the defendant must have been prejudiced by counsel's deficient performance." Gideon, 244 N.J. at 550 (citing Strickland, 466 U.S. at 687). To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Failure to meet either prong of the Strickland/Fritz test will result in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

A-1059-22

The defendant must establish, by a preponderance of credible evidence, that he is entitled to the requested relief. Nash, 212 N.J. at 541. To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). The defendant must do more than make "bald assertions" of ineffective assistance. State v. Cummings, 321 N.J. Super. 154, 170, 728 (App. Div. 1999). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

"Complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy [of counsel]." State v. Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). Courts must apply a "highly deferential" standard when reviewing counsel's strategic decisions. Strickland, 466 U.S. at 689.

When claiming that counsel should have called an expert witness, a defendant must demonstrate that an independent expert would have reached a materially different conclusion from the State's expert. State v. Marshall, 148 N.J. 89, 211 (1997). "Determining which witnesses to call . . . is one of the most difficult strategic decisions that any trial attorney must confront . . . [t]herefore

15

. . . a court's review of such a decision should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 320-21 (2005) (quoting Strickland, 466 U.S. at 689).

Our Supreme Court has recognized that PCR counsel must "communicate with his or her client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward." State v. Rue, 175 N.J. 1, 18 (2002). PCR counsel must "advance all of the legitimate arguments that the record will support." State v. Webster, 187 N.J. 254, 257 (2006). In addition to the Strickland standard, Rule 3:22-6(d) imposes specific obligations on PCR counsel. The rule requires that PCR counsel "advance all of the legitimate arguments requested by the defendant that the record will support." State v. Porter, 216 N.J. 343, 352 (2013) (quoting Webster, 187 N.J. 254, 257 (2006)).

A defendant making a claim of IAC "must do more than make bald assertions that he was denied the effective assistance of counsel." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170). Allegations that "are too vague, conclusory, or speculative" will not establish a prima facie case of ineffective assistance of counsel. Ibid. (quoting Marshall, 148 N.J. at 158). The defendant bears the burden of establishing a prima facie claim by alleging and

A-1059-22

articulating specific facts that "provide the court with an adequate basis on which to rest its decision."  Mitchell, 126 N.J. at 579.

C.

Defendant argues that plea counsel provided ineffective assistance when they failed to adequately communicate with him and failed to investigate critical evidence.  After careful review of the record, we are unconvinced.

Regarding communication issues, the record shows defendant and plea counsel had an amicable relationship until defendant pled guilty to the first indictment, after which the relationship deteriorated.  At the evidentiary hearing, counsel testified that this change occurred because they disagreed about strategy regarding the second indictment.  Despite this disagreement, counsel testified that defendant was provided with discovery as it became available.  The PCR court found counsel's testimony credible and further found counsel's performance was not deficient.  We agree with the PCR court.

Defendant's dissatisfaction with counsel's strategic decisions is insufficient to establish that counsel's performance was objectively unreasonable.  The deterioration of the attorney-client relationship stemmed from strategic disagreements, which does not constitute ineffective assistance under Strickland.

A-1059-22

Defendant further contends that counsel failed to retrieve certain medical records and failed to interview two witnesses. Defendant argues that this information would have supported his self-defense claim by showing a different weapon was used in the robbery and demonstrating that the victims targeted him in retaliation. Counsel testified that they believed they had obtained the medical records and had promptly provided them to defendant. The PCR court found counsel's testimony credible on this point.

Even assuming that counsel was ineffective when they failed to get the additional medical records or interviewed the witnesses, defendant's claim does not satisfy Strickland's second prong. The record contains substantial evidence supporting the self-defense claim, including testimony about defendant's black eye and the medical examiner's opinion that defendant's self-defense account was plausible. We conclude that the additional medical records or witness testimony would not have altered the result of the proceedings.

We further conclude that the PCR court's findings regarding plea counsel's performance were supported by sufficient credible evidence in the record. Defendant has not established that counsel's representation fell below an objective standard of reasonableness or that the alleged deficiencies prejudiced defendant.

18

## D.

Defendant raises several claims of ineffective assistance by trial counsel. We address each in turn.

First, defendant contends that counsel was ineffective for failing to investigate photographs showing gunpowder stippling on his face. During the evidentiary hearing, trial counsel testified that while they could not specifically recall investigating the stippling issue, they presented substantial evidence supporting defendant's self-defense claim. The PCR judge found counsel's testimony credible.

Defendant's claim fails to satisfy the second prong of Strickland. The record demonstrates substantial credible evidence already supported defendant's self-defense theory. This evidence included Det. Hannigan's testimony identifying the marks in the photos as stippling, evidence of defendant's black eye, visible marks on his hands, and the medical examiner's testimony that defendant's self-defense account was plausible. The additional photographs would have been cumulative and not have changed the outcome of the trial.

Defendant next argues that counsel was ineffective for failing to conduct pre-trial witness interviews. At the evidentiary hearing, counsel testified to their

19

strategic choices before and during trial.  Such choices fall within the scope of judgments entitled to substantial deference under Strickland.

Defendant also contends that trial counsel was ineffective for failing to call an expert witness to explain the effects of gunpowder stippling.  However, defendant has not shown that an independent expert would have reached a materially different conclusion from the State's expert.  Moreover, the evidence supporting his self-defense claim was already presented through other means.  Therefore, counsel was not ineffective for failing to call an expert witness.

Defendant further argues that trial counsel was ineffective for calling a defense investigator to testify to the efforts to locate a witness.  Counsel explained that the trial strategy was to demonstrate diligence in searching for the witness, rebutting any suggestion that the witness was fictitious.  This strategic decision falls well within the range of reasonable assistance under Strickland.

Finally, defendant claims that trial counsel provided ineffective assistance by failing to call two additional witnesses.  However, this claim lacks merit because defendant failed to show how the additional witness testimony would have changed the result of the proceeding.

20

Based on our thorough review of the record, we conclude that the PCR court's findings were supported by sufficient credible evidence. None of defendant's claims establish that trial counsel's performance was deficient or that any alleged deficiencies prejudiced his defense. The strategic decisions made by counsel were reasonable under the circumstances and are entitled to our deference.

E.

Defendant argues that he is entitled relief based on cumulative errors by counsel. However, defendant has not demonstrated any prejudicial errors made by his plea counsel or trial counsel and therefore, the principle of cumulative error is not applicable.

Cumulative error is "where any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse." State v. Orecchio, 16 N.J. 125, 134 (1954). However, when a "defendant alleges multiple trial errors, the theory of cumulative error will . . . not apply where no error was prejudicial[,] and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014).

Here, defendant has not shown that there were any errors, let alone several errors, that would fall under the cumulative error theory and require reversal. Therefore, the cumulative error claim is without merit, and we discern no error.

F.

Defendant raises two arguments concerning alleged IAC by PCR counsel. Generally, issues raised for the first time on appeal need not be considered because they "never were subjected to the rigors of an adversary hearing, and . . . their legal propriety never was ruled on by the trial court."  State v. Robinson, 200 N.J. 1, 18-19 (2009).  For completeness, we consider them briefly.

Defendant first contends that PCR counsel failed to properly communicate with the defense expert by not providing "reference voices" in the enhanced audio recording for speaker identification.  At the evidentiary hearing, the expert testified she only had defendant's voice as a reference.  The expert stated, "the only information I had was Yusuf and his voice.  So I could take his voice and then everybody else was—was extra."

Even assuming IAC, defendant fails to establish prejudice under Strickland's second prong.  The PCR court's conclusion turned not on speaker identity but on content, finding the court "cannot discern a back-and-forth

conversation being conducted between petitioner and detectives, as petitioner alleges." The enhanced recording did not show defendant being pressured into giving a statement. Additional voice identification would not have altered the court's finding that defendant's Fifth Amendment rights were not violated. It follows that defendant cannot satisfy Strickland's second prong.

Defendant next argues that his PCR counsel and substitute counsel were ineffective for failing to brief, advance, or investigate meritorious claims, violating Rule 3:22-6(d) and the Sixth Amendment. We are not persuaded, as defendant's claims are vague and conclusory. Defendant fails to specify which claims were neglected, or why they merited investigation. The absence of a factual foundation undermines defendant's ability to establish a prima facie IAC case.

The record shows PCR counsel investigated and presented defendant's claims regarding the enhanced recording and ineffective assistance of trial and plea counsel. The PCR court conducted an evidentiary hearing where counsel called multiple witnesses and vigorously advocated for defendant. Without some specific allegation regarding neglected meritorious claims, defendant cannot establish deficient performance under Strickland's first prong or

23

demonstrate how additional claims would have altered the proceedings' outcome under the second prong.

In sum, defendant failed to establish PCR counsel's ineffective assistance under <u>Strickland</u>. His claims are too vague and conclusory to warrant relief, and we affirm the PCR court's order in this regard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1059-22